Nos. 24-7000 (lead), 24-3449, 24-3450, 24-3497, 24-3504, 24-3507,
24-3508, 24-3510, 24-3511, 24-3517, 24-3519, 24-3538

# In the United States Court of Appeals for the Sixth Circuit

---

IN RE: MCP NO. 185: FEDERAL COMMUNICATIONS COMMISSION,
IN THE MATTER OF SAFEGUARDING AND SECURING THE OPEN
INTERNET, DECLARATORY RULING, ORDER, REPORT AND ORDER,
AND ORDER ON RECONSIDERATION, FCC 24-52, 89 FED. REG. 45404,
PUBLISHED MAY 22, 2024

---

On Petitions for Review

---

**JOINT OPPOSITION OF OHIO TELECOM ASSOCIATION,
USTELECOM – THE BROADBAND ASSOCIATION, OHIO CABLE
TELECOMMUNICATIONS ASSOCIATION, NCTA – THE INTERNET &
TELEVISION ASSOCIATION, CTIA – THE WIRELESS ASSOCIATION,
WIRELESS INTERNET SERVICE PROVIDERS ASSOCIATION, ACA
CONNECTS – AMERICA'S COMMUNICATIONS ASSOCIATION, FLORIDA
INTERNET & TELEVISION ASSOCIATION, MCTA – THE MISSOURI
INTERNET & TELEVISION ASSOCIATION, AND TEXAS CABLE
ASSOCIATION TO MOTIONS TO TRANSFER**

---

HELGI C. WALKER
JONATHAN C. BOND
RUSSELL B. BALIKIAN
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
(202) 955-8500

*Counsel for CTIA – The Wireless
Association*

JEFFREY B. WALL
MORGAN L. RATNER
ZOE A. JACOBY
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006
(202) 956-7500

*Counsel for Ohio Telecom Association,
USTelecom – The Broadband
Association, and NCTA – The Internet &
Television Association*

*(Additional counsel on next page)*

MATTHEW A. BRILL
ROMAN MARTINEZ
MATTHEW T. MURCHISON
CHARLES S. DAMERON
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Ohio Cable
Telecommunications Association,
NCTA – The Internet & Television
Association, Florida Internet &
Television Association, MCTA – The
Missouri Internet & Television
Association, and Texas Cable
Association*


JEFFREY A. LAMKEN
RAYINER I. HASHEM
JENNIFER E. FISCHELL
JACKSON A. MYERS
MOLOLAMKEN LLP
600 New Hampshire Avenue NW,
Suite 500
Washington, DC 20037
(202) 556-2000

*Counsel for ACA Connects –
America's Communications
Association*


MAXWELL F. GOTTSCHALL
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

*Counsel for Ohio Telecom
Association, USTelecom – The
Broadband Association, and
NCTA – The Internet & Television
Association*


THOMAS M. JOHNSON, JR.
JOSHUA S. TURNER
JEREMY J. BROGGI
BOYD GARRIOTT
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

STEPHEN E. CORAN
LERMAN SENTER PLLC
2001 L Street NW, Suite 400
Washington, DC 20036
(202) 429-8970

*Counsel for WISPA – The
Association for Broadband Without
Boundaries*

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................1

BACKGROUND ..............................................................................4

ARGUMENT ...................................................................................9

I.     THIS COURT SHOULD RULE ON PETITIONERS'
PENDING STAY MOTION BEFORE IT DECIDES THE
TRANSFER MOTIONS....................................................................9

II.    THIS COURT SHOULD DENY THE TRANSFER MOTIONS.......11

    A.    This Case Does Not Meet The High Bar For Transfer ...............12

    B.    The Arguments For Transfer Lack Merit....................................18

        1.    The D.C. Circuit's prior Title II cases do not justify
transfer......................................................................................18

        2.    This case is not a follow-on to *Mozilla* ................................23

CONCLUSION................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Pub. Gas Ass'n* v. *FPC*,
  555 F.2d 852 (D.C. Cir. 1976)................................................................21

*Arkansas Midland R.R. Co.* v. *Surface Transp. Bd.*,
  2000 WL 1093266 (D.C. Cir. 2000)....................................................13

*Ball* v. *NLRB*,
  299 F.2d 683 (4th Cir. 1962)...............................................................8

*Buckeye Partners, L.P.* v. *FERC*,
  2022 WL 1528311 (5th Cir. May 13, 2022).........................................13

*City of Eugene, Oregon* v. *FCC*,
  998 F.3d 701 (6th Cir. 2021)...............................................................18

*Consumers' Rsch.* v. *FCC*,
  67 F.4th 773 (6th Cir. 2023) ...............................................................18

*Dayton Power & Light Co.* v. *EPA*,
  520 F.2d 703 (6th Cir. 1975)..........................................................14, 24

*Eschelon Telecom, Inc.* v. *FCC*,
  345 F.3d 682 (8th Cir. 2003)......................................................13, 24, 25

*Formaldehyde Inst., Inc.* v. *U.S. Consumer Prod. Safety Comm'n*,
  681 F.2d 255 (5th Cir. 1982)...............................................................17

*In re Fort Worth Chamber of Com.*,
  100 F.4th 528 (5th Cir. 2024) .............................................................11

*In re MCP No. 165*,
  21 F.4th 357 (6th Cir. 2021) ...............................................................10

*Mozilla Corp.* v. *FCC*,
  940 F.3d 1 (2019) .........................................................................*passim*

*Newsweek, Inc.* v. *U.S. Postal Serv.*,
  652 F.2d 239 (2d Cir. 1981) ..................................................................15, 20

*Public Serv. Comm'n* v. *FPC*,
  472 F.2d 1270 (D.C. Cir. 1972)........................................................................19

*U.S. Telecom Ass'n* v. *FCC*,
  825 F.3d 674 (D.C. Cir. 2016)..................................................................*passim*

*U.S. Telecom Ass'n* v. *FCC*,
  855 F.3d 381 (D.C. Cir. 2017) (en banc).......................................................3, 6

*United Church of Christ Off. of Commc'ns* v. *FCC*,
  Nos. 08-3245 et al., 2008 U.S. App. LEXIS 28519 (6th Cir.
  May 22, 2008)..............................................................................12, 20, 21

*United States* v. *Johnson*,
  529 U.S. 53 (2000)...............................................................................................14

*West Virginia* v. *EPA*,
  597 U.S. 697 (2022)......................................................................................3, 22

**Statutes**

28 U.S.C.
  § 2112..........................................................................................................*passim*
  § 2343...................................................................................................................20

47 U.S.C.
  § 153.......................................................................................................................4
  § 402....................................................................................................................20

Telecommunications Act of 1996,
  Pub. L. No. 104-104, 110 Stat. 56 ....................................................................4

**Regulatory Materials**

89 Fed. Reg. 45,404 (May 22, 2024) ......................................................................5

Fed. R. App. P. 18.......................................................................................................9

*Protecting and Promoting the Open Internet,*
   30 FCC Rcd. 5601 (2015)...................................................................5

*Restoring Internet Freedom,*
   33 FCC Rcd. 311 (2018).....................................................................6

*Restoring Internet Freedom,*
   35 FCC Rcd. 12328 (2020)...............................................................23

**Other Authorities**

Toni M. Fine, *Multiple Petitions for Review of Agency Rulings:*
   *A Call for Further Reform,*
   31 New Eng. L. Rev. 39 (1996)......................................................7, 8

Eric M. Fraser et al., *The Jurisdiction of the D.C. Circuit,*
   23 Cornell J.L. & Pub. Pol'y 131 (2013) .........................................20

OCTA, *About the OCTA,*
   https://www.octa.org/aws/OCTA/pt/sp/about.................................16

Ohio Telecom Association, *About OTA,*
   http://www.ohiotelecom.com/aws/OTIA/pt/sp/about ....................16

U.S. Judicial Panel on Multidistrict Litigation, *Multi Circuit*
   *Petition Report* (June 4, 2024),
   https://www.jpml.uscourts.gov/sites/jpml/files/Multicircuit
   _Petition_%28MCP%29_Docket_Report-6-11-24.pdf.................12

Donald B. Verrilli, Jr. & Ian Heath Gershengorn, *Title II "Net*
   *Neutrality" Broadband Rules Would Breach Major Questions*
   *Doctrine,*
   76 Fed. Commc'ns L.J. 321 (2024)..................................................22

Wright & Miller, *Federal Practice and Procedure* (3d ed.
   June 2024 update) ......................................................................14, 17

**INTRODUCTION**

Congress established the multi-circuit lottery to put an end to races to the courthouse and a Washington, D.C.-centric bias in administrative challenges. Congress instead put in place a random selection procedure, in recognition of the twin facts that courts of appeals located throughout the country are capable of adjudicating administrative disputes and petitioners located throughout the country are entitled to an equal opportunity to litigate in their home circuits. *See* 28 U.S.C. § 2112(a)(3). Here, that lottery process randomly selected this Court among all the statutorily eligible and competent courts to hear this litigation.

In moving to transfer these cases, the Federal Communications Commission and Benton Institute would subvert Congress's preference for dispersed regulatory challenges rather than specialized courts. In their view, the D.C. Circuit should adjudicate petitioners' challenge to a Commission order reclassifying high-speed Internet access service (called "broadband") under Title II of the Communications Act of 1934, because the D.C. Circuit has previously heard cases—with different administrative records and under different legal frameworks—involving the classification of broadband. It is obvious why the Commission and Benton want to sidestep the lottery process

and transfer these cases to the D.C. Circuit:  the last time the Commission classified broadband under Title II, it defended its order in the D.C. Circuit and won there.  *See U.S. Telecom Ass'n* v. *FCC*, 825 F.3d 674, 704-706 (D.C. Cir. 2016).  But the premise of the lottery system is that such forum shopping is impermissible, and a matter stays in the chosen court unless there is a compelling reason to send it elsewhere.  There is none.  This Court is just as competent to review FCC regulations and to interpret statutes as the D.C. Circuit, and the lottery statute's narrow exception allowing for transfer in "the convenience of the parties in the interest of justice," 28 U.S.C. § 2112(a)(5), does not apply.

The Commission and Benton barely argue that the "convenience of the parties" favors transfer to Washington, D.C.  Both invoke the location of petitioners' *lawyers*, which says nothing about petitioners' own convenience. Petitioners who filed in this Circuit, including the Ohio Telecom Association (OTA), Ohio Cable Telecommunications Association (OCTA), and USTelecom, represent dozens of Ohio businesses.  Petitioners' members employ tens of thousands of people in Kentucky, Michigan, Ohio, and Tennessee, and serve millions of customers here—all of whom will be affected by the Commission's latest about-face on Title II.  The people and businesses in this Circuit have a

concrete stake in this litigation; Washington, D.C. has no monopoly on the Internet or administrative law.

Nor would a freestanding "interest of justice" analysis, if applicable, support transfer. This case is not *U.S. Telecom* redux. Both the law and the facts have changed since 2015. Starting with the law, the D.C. Circuit decided *U.S. Telecom* under a *Chevron* framework. Since then, the Supreme Court has retreated from *Chevron*, and the Commission invoked it here only as an alternative argument in a footnote. Instead, the Supreme Court has made clear that a different framework governs: the major-questions doctrine. *See West Virginia* v. *EPA*, 597 U.S. 697, 724 (2022); *see also U.S. Telecom Ass'n* v. *FCC*, 855 F.3d 381, 480 (D.C. Cir. 2017) (Kavanaugh, J., dissenting from denial of rehearing en banc) (finding it "indisputable" that the FCC's prior Title II classification was "a major rule"). Neither the D.C. Circuit nor any other court has reached the critical questions (i) whether the major-questions doctrine, as developed in recent Supreme Court cases, applies here; or (ii) barring that, what the *best* reading of the statute is.

The facts, too, have changed. The agency has compiled a new administrative record, in which both the Commission and tens of thousands of commenters have debated the effect of the Commission's 2018 reversal of the

3

2015 rule, the relevance of certain technological changes, and the persuasiveness of new rationales for the Commission's action. None of this has ever been evaluated in any court. Given these legal and factual developments, the D.C. Circuit's experience in *U.S. Telecom* and other broadband cases does not give it any particular claim to this case, let alone a claim so compelling that the "interest of justice" demands transfer.

At bottom, this is a rule with nationwide effect—including significant effect in this Circuit. Petitioners' challenge turns on a statutory-interpretation question that no court has yet resolved under prevailing legal standards and that this Court is more than capable of adjudicating. This is precisely the sort of action for which Congress created the multi-circuit lottery. The Court should deny the motions to transfer.

## BACKGROUND

1. The Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, established two mutually exclusive categories of interstate communications services: "information service[s]," which are subject to limited oversight, and "telecommunications service[s]," which are subject to the onerous common-carrier provisions in Title II of the Communications Act of 1934. 47 U.S.C. § 153(24), (53). Title II, as the Commissioners who

dissented from the current Order explained, is "one of the most comprehensive suites of regulatory authority known to any agency in this country." Simington Dissent, Stay App. 508-509; *see* Carr Dissent, Stay App. 484.

2.    On April 25, 2024, the Commission adopted the Order at issue, reclassifying broadband as a telecommunications service subject to Title II's common-carrier regime. *Safeguarding and Securing the Open Internet*, Docket Nos. 23-320 & 17-108, FCC 24-52 (released May 7, 2024). The Commission published the Order in the Federal Register on May 22, 2024. 89 Fed. Reg. 45,404. As petitioners have explained in greater detail in their pending stay motion, the Order subjects Internet service providers (ISPs) across the country to an array of heavy-handed and vague rules. *See* ECF No. 5 at 19-27. These include a general conduct standard, which prohibits practices "that unreasonably interfere with the ability of consumers or [content providers] to select, access, and use" broadband. Order ¶ 513.

The Order is the second time the Commission has sought to classify broadband under Title II. In 2015, the Commission broke with nearly 20 years of precedent to classify broadband as a "telecommunications service" subject to Title II regulation. *Protecting and Promoting the Open Internet*, 30 FCC Rcd. 5601, 5757-5777 (2015). A divided panel of the D.C. Circuit upheld that

order, deferring to it under *Chevron* as a reasonable construction of an ambiguous statute. *See U.S. Telecom*, 825 F.3d at 704-706. The D.C. Circuit denied rehearing en banc over a dissent from then-Judge Kavanaugh, who concluded that the major-questions doctrine precluded Title II classification because Congress had not clearly authorized the Commission to subject broadband to common-carrier treatment. 855 F.3d at 417-418.

While a petition for Supreme Court review was pending, the Commission restored broadband's information-service classification and accompanying light-touch regulatory framework. *Restoring Internet Freedom*, 33 FCC Rcd. 311 (2018). The D.C. Circuit largely upheld that order, too, under the same *Chevron* framework. *See Mozilla Corp.* v. *FCC*, 940 F.3d 1, 35 (2019). In neither *U.S. Telecom* nor *Mozilla* did the D.C. Circuit decide the best interpretation of the terms "information service" or "telecommunications service" in the 1996 Act; the court sidestepped the question under a robust view of agency deference.

3.    Several trade organizations and public-interest groups filed petitions for review of the Commission's Order in the First, Fifth, Sixth, Eighth, Ninth, Eleventh, and D.C. Circuits. In this Circuit, OTA, OCTA, and USTelecom brought challenges. OTA and OCTA are local trade associations

6

that together represent dozens of Ohio ISPs subject to the Order. USTelecom, which joined OTA's petition, is a national trade association with a dozen member ISPs in this Circuit. Other national trade associations that filed petitions for review in other circuits—including ACA Connects, CTIA, NCTA, and WISPA—also have members in this Circuit.

Under 28 U.S.C. § 2112, when challenges to the same Commission order are filed within ten days, the Commission must notify the Judicial Panel on Multidistrict Litigation (JPML). The JPML conducts a lottery to randomly select one of the circuits in which a petition was filed, then consolidates all challenges in that circuit. *Id.* § 2112(a)(3). The selected circuit may transfer the litigation to another circuit only "[f]or the convenience of the parties in the interest of justice." *Id.* § 2112(a)(5).

Congress created this multi-circuit lottery process in 1988 to replace the prior regime, under which literal "races to the courthouse" determined the forum in which agency challenges would be consolidated. Toni M. Fine, *Multiple Petitions for Review of Agency Rulings: A Call for Further Reform*, 31 New Eng. L. Rev. 39, 45 (1996). Among the obvious problems with that system, many courts had been "concerned that the first-to-file rule may have provided an unfair disadvantage" to those located outside Washington, D.C.

*Id.* at 49; *see, e.g.*, *Ball* v. *NLRB*, 299 F.2d 683, 686 (4th Cir. 1962) (observing that the prior system "place[d] the District of Columbia Circuit in a preferred position as the reviewing tribunal"). The lottery solved that problem by putting all circuits in which petitions were timely filed on even footing by randomly selecting among them.

Here, the JPML randomly selected this Court to decide the consolidated cases. On June 6, the JPML entered an order sending all the cases to this Court. ECF No. 1. The next day, the Commission filed a motion to transfer the litigation to the D.C. Circuit. ECF No. 3. Petitioner the Benton Institute for Broadband and Society, which supports Title II reclassification, filed a transfer motion on June 12. ECF No. 4.

4.     On June 10, the group of petitioners here filed a motion to stay the Commission's Order, which is scheduled to take effect on July 22, pending judicial review. ECF No. 5. Petitioners' stay motion explains that the Order is unlawful and will cause imminent and irreparable harm to petitioners' members. The stay motion is currently pending.

## ARGUMENT

## I.   THIS COURT SHOULD RULE ON PETITIONERS' PENDING STAY MOTION BEFORE IT DECIDES THE TRANSFER MOTIONS.

As a threshold matter, the Court should defer ruling on the transfer motions until it decides petitioners' pending stay motion, which petitioners filed the first business day after the Commission denied a stay.  *See* Fed. R. App. P. 18(a)(2)(A)(ii).  In short, the stay motion is time-sensitive; the transfer request is not.

Petitioners and their members need a prompt stay to protect their members from ongoing, irreparable harm.  As petitioners have explained, among other harms, their members need to spend substantial resources to comply with the Order, including its vague general conduct standard.  ECF No. 5 at 20-21.  They are incurring those compliance costs already, even before the Order goes into effect.  Stay App. (Docket No. 24-3400 Nos. 18 & 19) 1646 (NCTA declaration explaining that its members face burdensome compliance costs "*immediately* if the Order is not stayed").  Every day the Order is not stayed inflicts costs that petitioners will not be able to recover if they prevail.

By contrast, no party will suffer substantial prejudice if the Court rules on the transfer motion after deciding the stay.  The Commission maintains

that, if transfer is granted, it may burden "both courts' (and the parties') time and resources" to file potentially duplicative stay briefing in two courts. ECF No. 3 at 1. Of course, duplicative review would occur only if this Court granted transfer, which it should not. *See infra* pp. 11-25. But regardless, filing duplicative briefs in two courts is not remotely comparable to the harms that the Order is imposing on petitioners. Petitioners have to establish new compliance regimes that cost millions of dollars. Against that, the FCC complains that it might have to refile an opposition brief.

Moreover, any duplication is built into the statutory scheme. Congress already weighed those competing concerns and determined that it is appropriate to adjudicate a stay motion *before* any post-lottery transfer. The lottery statute makes clear that "any court of appeals in which" a challenge to an order has been filed "may, to the extent authorized by law, stay the effective date of the order," and "any such stay may *thereafter* be modified, revoked, or extended by" a transferee court. 28 U.S.C. § 2112(a)(4) (emphasis added); *see, e.g.*, *In re MCP No. 165*, 21 F.4th 357 (6th Cir. 2021) (dissolving stay granted by the Fifth Circuit). That reflects the common-sense order of operations: a stay motion is a request for emergency relief; a post-lottery transfer is a matter of "convenience." 28 U.S.C. § 2112(a)(5).

In an analogous context, the Fifth Circuit recently granted mandamus of a district court order that transferred a case before ruling on a "diligently" filed motion for a preliminary injunction. *See In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 534 (5th Cir. 2024). The court of appeals explained that emergency relief "must be granted *promptly* to be effective." *Id.* at 533 (citation omitted). By sitting on the pending motion for a preliminary injunction and instead ruling first on the transfer issue, the district court "did not act promptly" enough to "preserv[e] the opportunity for effective permanent relief." *Id.* at 534 (emphasis omitted) (citation omitted). The Commission attempts to distinguish *Fort Worth* as a case in which "*an appeal was pending that divested the district court of jurisdiction*" to transfer, Docket No. 24-3449, ECF No. 16 at 2 n.1, but that misses the broader point that the district court erred by acting on the transfer motion rather than the motion for emergency relief.

## II.    THIS COURT SHOULD DENY THE TRANSFER MOTIONS.

To justify transferring this case to the D.C. Circuit, the movants bear the heavy burden of showing that transfer would be "[f]or the convenience of the parties in the interest of justice." 28 U.S.C. § 2112(a)(5). This Court has already recognized that it is not in the "interest of justice" to transfer litigation

to another court simply because that court has experience and a "general familiarity with the legal questions presented by a case." *United Church of Christ Off. of Commc'ns* v. *FCC*, Nos. 08-3245 et al., 2008 U.S. App. LEXIS 28519, at *6 (6th Cir. May 22, 2008) (citation omitted).   Instead, the Commission and Benton must point to a reason why it would be significantly fairer, more convenient, or more efficient for the parties to litigate in the proposed transfer court.  They cannot make that showing here.

### A.     This Case Does Not Meet The High Bar For Transfer.

1.     The strong default under Section 2112 is that the court selected by the lottery will ultimately hear the dispute—indeed, that is the lottery's very purpose.  Section 2112(a)(5) allows the selected court to transfer a case to another circuit, but only if transfer would be for "the convenience of the parties in the interest of justice."  That is a high bar.  To petitioners' knowledge, this Court has not transferred *a single post-lottery case* under Section 2112(a)(5) in at least 30 years.[1]

---

[1]     *See* U.S. Judicial Panel on Multidistrict Litigation, *Multi Circuit Petition Report*   (June 4, 2024), https://www.jpml.uscourts.gov/sites/jpml/ files/Multicircuit_Petition_%28MCP%29_Docket_Report-6-11-24.pdf  (listing all lottery cases since 1988).  Certain dockets before 1994 are not readily accessible.

The Commission points to only two post-lottery cases, both out of circuit, that granted opposed transfer motions under Section 2112(a)(5).  Mot. 21-22 (citing *Eschelon Telecom, Inc.* v. *FCC*, 345 F.3d 682 (8th Cir. 2003); *Arkansas Midland R.R. Co.* v. *Surface Transp. Bd.*, 2000 WL 1093266 (D.C. Cir. 2000) (per curiam)).  In each case, the challenged agency action was taken in direct response to a previous ruling by the transferee court, and transfer was thus "necessary" "to maintain continuity in the total proceeding."  *Eschelon*, 345 F.3d at 682 (citations omitted); *see Arkansas Midland R.R.*, 2000 WL 1093266, at *1.  The same is true of *Buckeye Partners, L.P.* v. *FERC*, 2022 WL 1528311, at *2 (5th Cir. May 13, 2022), a non-lottery case on which Benton relies (at 7), where the Fifth Circuit transferred the dispute because the challenged order was "part of the same regulatory action" that had bounced around the D.C. Circuit for 26 years.  These kinds of unusual circumstances are not present here.  *See infra* pp. 23-25.

Recognizing the high bar for transfer under 28 U.S.C. § 2112(a)(5), the Commission tries to lighten its burden.  It contends (at 18) that this Court has a "preexisting inherent discretionary power to transfer a proceeding to another circuit in the interest of justice and sound judicial administration."  According to the Commission, the Court may exercise that inherent authority

"independent of, and in addition to," its statutory transfer authority under Section 2112. *Id.* That is wrong. Section 2112(a)(5) provides the sole ground for post-lottery transfer. When Congress has specified the precise circumstances in which a transfer is appropriate, courts should not read in additional exceptions. *See United States* v. *Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others."); *see also* Wright & Miller, *Federal Practice and Procedure* § 3944 (3d ed. June 2024 update) (explaining that "intrinsic doubt" about inherent transfer power is "compounded by the adoption of an express transfer statute"). Accordingly, when this Court has relied on its inherent authority, it has been where Section 2112(a) does *not* apply. *See, e.g.*, *Dayton Power & Light Co.* v. *EPA*, 520 F.2d 703, 708 (6th Cir. 1975). In any event, the Court should not exercise any inherent authority for the reasons below.

2.    This case does not meet Section 2112(a)(5)'s demanding standard for transfer. Even the Commission acknowledges (at 23) that there is "no measurable difference in convenience" between the two circuits, and Benton echoes (at 9) that the statutory convenience standard is "rather archaic." Archaic or not, under Section 2112(a), the fact that two courts are equally

14

convenient is a reason *not* to transfer. *See Newsweek, Inc.* v. *U.S. Postal Serv.*, 652 F.2d 239, 243 (2d Cir. 1981) ("The interest of justice" generally "favors retention of jurisdiction in the forum chosen by an aggrieved party where . . . Congress has given [that party] a choice."). Transfer is appropriate only if the D.C. Circuit is significantly *more* convenient, efficient, or fair to host the litigation, and it is not.

a.      The challenged rule has no unique nexus to Washington, D.C. that would make the D.C. Circuit a superior forum. On the contrary, the Commission's Order affects businesses and consumers nationwide, as the Commission itself acknowledges. *See* Order ¶ 1 ("access to affordable reliable, high-speed broadband is essential to full participation in modern life *in the United States*") (emphasis added).

Those coast-to-coast effects will be felt in the Sixth Circuit as much as anywhere else. Petitioner OTA, for example, represents 41 telecommunications providers and two wireless providers that serve and employ tens of thousands of Ohioans—all of which will be subject to the challenged Order. OCTA similarly represents cable companies that serve and employ thousands of Ohioans and will be subject to the Order. The Sixth Circuit is plainly a convenient forum for those petitioners.

The Commission dismisses OTA and OCTA as mere tagalongs, suggesting that the only relevant entities are the national trade associations based in Washington, D.C. *See* Mot. 22-23 n.14. But OTA and OCTA are not mere proxies for Washington groups; they have deep roots in Ohio and a legitimate interest in litigating here. OTA was "the first established telecommunications association in the United States." Ohio Telecom Association, *About OTA*, http://www.ohiotelecom.com/aws/OTIA/pt/sp/about. OCTA, meanwhile, was founded over 50 years ago to represent the cable industry before the Ohio legislature as well as on the national stage. OCTA, *About the OCTA*, https://www.octa.org/aws/OCTA/pt/sp/about. Both entities participated in the Commission rulemaking here in their own names—notwithstanding Benton's irrelevant criticism (at 8) that they did not file *enough* comments. *See* OTA Reply Comment (Jan. 17, 2024); NCTA et al. Reply Comment (Jan. 17, 2024) (joined by OCTA).

In any event, the national petitioners have connections to the Sixth Circuit that make it convenient for them to litigate here, too. Their members employ thousands of people here. Nearly three dozen WISPA members, nearly six dozen ACA Connects members, a dozen USTelecom members, and one CTIA member have their headquarters or principal offices in Kentucky,

Michigan, Ohio, or Tennessee.  Many of these members are small ISPs, which are not concentrated in Washington, D.C.  For example, one WISPA member that filed a declaration in support of the stay motion is Imagine Networks, a small ISP that serves residential and commercial customers in Ohio. Stay App. 1622-1623.

To try to establish the convenience of litigating in Washington, the Commission (at 22) and Benton (at 8) point out that many of petitioners' counsel are based there.  But where petitioners' counsel keep their primary offices has little bearing on the "convenience of the *parties*."  *See Formaldehyde Inst., Inc.* v. *U.S. Consumer Prod. Safety Comm'n*, 681 F.2d 255, 262 (5th Cir. 1982) (per curiam) ("We do not find the location of the attorneys a significant basis for determining venue here.").  And even if lawyers' convenience might matter in some cases, it is irrelevant here.  Rule challenges are decided on the administrative record, and do not require lawyers to travel for discovery or frequent hearings.  *See* Wright & Miller § 3944.

b.    There are no fairness reasons to transfer either.  This is, at bottom, a statutory-interpretation case about the meaning of the Telecommunications Act of 1996 and the Communications Act of 1934.  It

should go without saying that this Court is just as capable of tackling statutory-interpretation questions as the D.C. Circuit. And even if experience with reviewing FCC rules were a prerequisite, this Court has heard its share of challenges to recent FCC rules. *See, e.g.*, *Consumers' Rsch.* v. *FCC*, 67 F.4th 773 (6th Cir. 2023); *City of Eugene, Oregon* v. *FCC*, 998 F.3d 701 (6th Cir. 2021). In fact, it is currently considering a challenge to the FCC data-breach rules relied upon in the Order here. *Ohio Telecom Ass'n* v. *FCC*, No. 24-3133; *see* Order ¶¶ 351, 356-359 & nn.1437-1453.

## B. The Arguments For Transfer Lack Merit.

The Commission raises two other arguments for transferring this case to the D.C. Circuit, but neither has merit.

### 1. The D.C. Circuit's prior Title II cases do not justify transfer.

The Commission maintains that the D.C. Circuit has special expertise here because it decided the *U.S. Telecom* and *Mozilla* cases, as well as earlier cases involving other "open Internet" rules. *See* Mot. 18-21. That argument fails on both the law and the facts.

a. The Commission's reliance on the supposed expertise of the D.C. Circuit conflicts with the text of Section 2112, the statutory structure, and precedent. Starting with the text, a court of appeals' experience deciding

18

related issues in other cases, on other administrative records, has no clear bearing on the "convenience of the parties in the interest of justice."  It may, in some instances, be more convenient to litigate in a particular court if parties have already litigated there in the same case, or on the same record.  But experience with other, separate cases involving the appropriate statutory classification of broadband creates no "convenience" for the parties here, as required under Section 2112(a)(5).

On structure, the Commission's argument would undermine both Congress's decision to allow petitioners to sue in their home courts and its lottery procedures for selecting among those courts.  Rather than litigating cases under a system of generalized courts selected at random to hear any particular dispute, the Commission would have parties seek to transfer to the court with the most experience in a particular area.  Over time, then, the randomized lottery system would be distorted into something very different: a system of specialized courts in which the D.C. Circuit hears FCC challenges, the Second Circuit hears SEC challenges, and so on.  That is not the system Congress adopted.  *See Public Serv. Comm'n* v. *FPC*, 472 F.2d 1270, 1272 (D.C. Cir. 1972) (rejecting transfer based on "a theory of specialization of tribunals").

Of course, when Congress wants to establish the D.C. Circuit as the exclusive forum for a particular type of rule challenge, it knows how to do that. In dozens of statutes spanning a variety of agencies, Congress has channeled all litigation to the D.C. Circuit. *See* Eric M. Fraser et al., *The Jurisdiction of the D.C. Circuit*, 23 Cornell J.L. & Pub. Pol'y 131, 154-155 (2013). Congress has even chosen that approach for a limited set of FCC decisions. *See* 47 U.S.C. § 402(b). But Congress did not choose that approach here. *See id.* § 402(a); 28 U.S.C. §§ 2343, 2112. The Commission's attempt to turn the D.C. Circuit into a de facto exclusive forum for challenges to Commission rules involving Title II thus conflicts with Congress's design. *See Newsweek*, 652 F.2d at 243.

Precedent confirms the textual and structural lessons. This Court has already rejected the supposed expertise of the D.C. Circuit as a basis for transfer under Section 2112(a)(5). In *United Church of Christ*, the Court considered a request to transfer a lottery case to the D.C. Circuit on the ground that the court had previously decided similar challenges. 2008 U.S. App. LEXIS 28519, at *5. This Court denied the motion, emphasizing that the "D.C. Circuit is not to function as a specialized tribunal with expertise in agency matters." *Id.* at *6. The mere fact that the D.C. Circuit had a "general

familiarity with the legal questions presented by a case" was not enough to justify transfer under Section 2112's demanding standard.  *Id.* (citing *American Pub. Gas Ass'n* v. *FPC*, 555 F.2d 852, 857 (D.C. Cir. 1976)).

The Commission cites as precedent the Ninth Circuit's decision to grant an *unopposed* motion to transfer to the D.C. Circuit the challenges to the FCC's 2018 classification order.  *See* Mot. 19-20.  But that situation is inapposite.  The parties there, including the petitioners that filed in the Ninth Circuit, all must have believed that transfer was in their convenience because they agreed to it.  Here, the parties—including, critically, the petitioners who filed in this Circuit and are entitled to their fair, random opportunity to litigate here—do not all share that view.  The *Mozilla* petitioners' position on transfer does not bind the present petitioners or this Court.

b.    Even if a court of appeals' specialization were a legitimate basis for transfer under Section 2112, the D.C. Circuit's prior experience in broadband cases, including *U.S. Telecom* and *Mozilla*, would merit little weight here.  The Commission insists (at 20) that the resolution of this case "is likely to turn significantly on the details of the D.C. Circuit's [previous] decisions," but it does not say why—and for good reason.  In addition to the fact that they are not binding on this Court, *U.S. Telecom* and *Mozilla* are not

21

even very helpful.  Both cases were decided under a *Chevron* framework and never reached the ultimate question of how best to read the statute.  Any day, the Supreme Court may eliminate or modify the framework under which those cases were decided.[2]

Moreover, Supreme Court decisions since *U.S. Telecom* and *Mozilla* make clear that the major-questions doctrine, not *Chevron*, is the correct framework for deciding this case.  *See West Virginia*, 597 U.S. at 723; Donald B. Verrilli, Jr. & Ian Heath Gershengorn, *Title II "Net Neutrality" Broadband Rules Would Breach Major Questions Doctrine*, 76 Fed. Commc'ns L.J. 321, 323-329 (2024).  In *West Virginia*, the Court favorably cited then-Judge Kavanaugh's dissenting opinion in *U.S. Telecom*, which concluded that reclassifying broadband under Title II flunks the major-questions doctrine.  597 U.S. at 723.  In *U.S. Telecom* and *Mozilla*, the D.C. Circuit did not have the benefit of the Supreme Court's recent major-questions cases and thus did not decide whether the current major-questions doctrine applies here.  This Court is equally capable of deciding that question.

---

[2] *See Loper Bright Enters.* v. *Raimondo*, No. 22-451 (U.S.); *Relentless, Inc.* v. *Department of Commerce*, No. 22-1219 (U.S.).

### 2.    This case is not a follow-on to *Mozilla*.

The Commission next argues that transfer is "especially appropriate" because the challenged Order was issued in part on reconsideration of a remand order from the D.C. Circuit in *Mozilla*.  Mot. 21.  That argument, too, lacks merit, because the Order is not a follow-on to *Mozilla* in any meaningful sense.

In *Mozilla*, the D.C. Circuit largely upheld the Commission's 2018 order restoring the light-touch approach to broadband, but the court issued a narrow remand (without vacatur) for the Commission to further consider certain effects of its order.  940 F.3d at 86.  In 2020, the Commission issued an order on remand, which maintained that none of those effects justified classifying broadband under Title II.  *See Restoring Internet Freedom*, 35 FCC Rcd. 12328 (2020).  A state commission filed a petition for review challenging the remand order, while other groups sought reconsideration.  Those reconsideration petitions remained pending for over three years, and the petition for review was held in abeyance.  *See California Pub. Utils. Comm'n* v. *FCC*, No. 21-1016 (D.C. Cir.).  When the Commission later switched positions, it necessarily rejected the rationale of both the 2018 order and the 2020 remand order.  So in a few paragraphs tacked on to the challenged Order,

the Commission formally vacated the 2020 remand order, granted the reconsideration petitions "to the extent consistent with and described in this Order," and otherwise dismissed those petitions as moot. Order ¶ 683. The Commission's technical dismissal of the reconsideration petitions was thus effectively an administrative exercise that followed from its reclassification decision, and no petitioner has challenged those dismissals.

Because this is not a true follow-on case to the *Mozilla* remand proceedings, none of the cases that the Commission cites (at 21) is relevant. The Commission points to *Dayton Power*, but that was a challenge to regulations that EPA had been directed to promulgate by a district court order affirmed by the D.C. Circuit. 520 F.2d at 708. This case, by contrast, is a challenge to an action that no court has ever directed the Commission to take—the decision to reclassify broadband under Title II and promulgate related "net neutrality" rules.

The other cases that the Commission cites involving "follow-on" rulemaking are also inapposite. The Commission points (at 21) to *Eschelon* and *Arkansas Midland Railroad Co.* But both of those were direct challenges to orders issued on remand from another court. In *Eschelon*, moreover, mandamus petitions involving the challenged order were already pending in

24

the other court.  345 F.3d at 682 n.1.  By contrast, no party in this case is challenging the 2020 remand order.  Nor is any party challenging the Commission's decision to dismiss the petitions for reconsideration as moot.

Moreover, in deciding this case, the Court will not be grappling with any issues relating to the *Mozilla* remand or the 2020 remand order.  Instead, this Court will consider new arguments on a new administrative record.  The agency has put forth new rationales for reclassifying broadband and establishing "net neutrality" rules.  *See, e.g.*, Order ¶¶ 30-68; *see also* Carr Dissent, Stay App. 494 (criticizing the Commission's "grab bag of new rationales").  By its own admission (at 16), the Commission has developed a massive new factual record, and no court has yet reviewed whether that record supports the Order.  There is thus no basis to treat this case as a follow-on rulemaking.

## CONCLUSION

For the foregoing reasons, the Court should rule on the pending motion for a stay and then deny the motions to transfer.

Respectfully submitted,

_s/ Helgi C. Walker_

HELGI C. WALKER
JONATHAN C. BOND
RUSSELL B. BALIKIAN
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
(202) 955-8500

_Counsel for CTIA – The Wireless Association_

_s/ Matthew A. Brill_

MATTHEW A. BRILL
ROMAN MARTINEZ
MATTHEW T. MURCHISON
CHARLES S. DAMERON
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200

_Counsel for Ohio Cable Telecommunications Association, NCTA – The Internet & Television Association, Florida Internet & Television Association, MCTA – The Missouri Internet & Television Association, and Texas Cable Association_

_s/ Jeffrey B. Wall_

JEFFREY B. WALL
MORGAN L. RATNER
ZOE A. JACOBY
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006
(202) 956-7500

MAXWELL F. GOTTSCHALL
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

_Counsel for Ohio Telecom Association, USTelecom – The Broadband Association, and NCTA – The Internet & Television Association_

_s/ Thomas M. Johnson, Jr._

THOMAS M. JOHNSON, JR.
JOSHUA S. TURNER
JEREMY J. BROGGI
BOYD GARRIOTT
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

_Counsel for WISPA – The Association for Broadband Without Boundaries_

s/ Jeffrey A. Lamken

JEFFREY A. LAMKEN
RAYINER I. HASHEM
JENNIFER E. FISCHELL
JACKSON A. MYERS
MOLOLAMKEN LLP
600 New Hampshire Avenue NW
Suite 500
Washington, DC 20037
(202) 556-2000

*Counsel for ACA Connects –
America's Communications
Association*

STEPHEN E. CORAN
LERMAN SENTER PLLC
2001 L Street NW, Suite 400
Washington, DC 20036
(202) 429-8970

*Counsel for WISPA – The
Association for Broadband
Without Boundaries*

JUNE 17, 2024

# CERTIFICATE OF COMPLIANCE

This response complies with Federal Rule of Appellate Procedure 27(d) because it contains 5,197 words.

This response also complies with the requirements of Federal Rules of Appellate Procedure 27(d) and 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

s/ Jeffrey B. Wall

JEFFREY B. WALL

JUNE 17, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2024, I electronically filed the foregoing response with the Clerk of Court for the U.S. Court of Appeals for the Sixth Circuit using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Jeffrey B. Wall
JEFFREY B. WALL

JUNE 17, 2024