**Nos. 24-7000 (lead), 24-3449, 24-3450, 24-3497, 24-3504, 24-3507, 24-3508, 24-3510, 24-3511, 24-3517, 24-3519, and 24-3538**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

IN RE: MCP NO. 185; OPEN INTERNET RULE (FCC 24-52)

OHIO TELECOM ASSOCIATION, et al.,
*Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,
*Respondents.*

**REPLY TO JOINT OPPOSITION OF OHIO TELECOM
ASSOCIATION, ET AL. TO MOTIONS FOR TRANSFER**

Petitioner Benton Institute for Broadband & Society ("Benton") respectfully submits this reply to the June 18, 2024 Joint Opposition of Ohio Telecom Association, *et al.* ("Opponents") to the pending motions to transfer ("Joint Opp.").[1]

Despite its length, the Joint Opp. does not fully or adequately respond to the motions' powerful justifications for transferring these cases to the District of Columbia Circuit. Thus, it merits only a brief reply to underscore a few points.

The Joint Opp. starts from a false premise. Its very first sentence says that

---

[1] Undersigned counsel is authorized to represent to the Court that Petitioner Media Alliance (No. 24-3504) and Petitioner National Consumer Law Center (No. 24-3517) support the motions for transfer and the arguments presented herein.

"Congress established the multi-circuit lottery to put an end to races to the courthouse and a Washington, D.C.-centric bias in administrative challenges." Joint Opp., p. 1. That just is not so, and this Court should ignore this rather transparent effort to undermine intra-circuit comity. There is not a word in the 1988 amendment creating the lottery system that even adverts to the District of Columbia Circuit, much less indicating a desire to modify its standing as one of the courts in which petitions for review may be filed. Nor does the report of the Administrative Conference that led to the 1988 amendment contain any such reference.[2] To the contrary, the legislative history clearly shows that Congress did not intend to demote the District of Columbia Circuit [3] or otherwise alter the status quo as to transfer.

In introducing the legislation on the floor, Rep. Frank said:

> That circuit which comes out of the random selection process will be the circuit that first hears this issue. I say first hears the issue, because there are in our law a number of doctrines, none of which I am familiar enough to talk about, which allow parties to argue for a removal of a case from one

---

[2] The report was later published as a law review article. See McGarity, *Multi-Party Forum Shopping For Appellate Review of Administrative Action*, 120 U. Pa. L. Rev. 302 (1980).

[3] The Opponents to a law review article which hints at such sentiment, but cites no authority. Joint Opp., pp. 7-8. Lacking any relevant judicial authority, they point to a 1962 case that surely could not have been in the minds of Congress 26 years later, and which, if anything, supports transfer. *See Ball v. NLRB*, 299 F.2d 683, 686 (4th Cir. 1962) (rejecting the argument that then-contemporary technology gave the D.C. Circuit a geographic advantage somehow justified denying a requested transfer).

> circuit to another on the grounds that a particular circuit would be a more appropriate forum for determining the issue.
>
> Nothing in the legislation before the House today detracts in any way, shape or form from the force of those doctrines; that is, whatever court you are first into, whether you are there because of random selection as our bill proposes, or because you were the guy with the fastest bicycle and you got to the courthouse first. All parties are free then to argue the various legal doctrines which would say no, it should not be here, it should be in this circuit or that circuit, so we change no substantive law.
>
> We change no rights that people have to argue for moving the case. What we do is to provide a far less unseemly way of resolving the dispute as to who should be where first.

133 Cong. Record H13780 (May 27, 1987)(Statement of Rep. Frank).

The Senate Committee Report was entirely consistent:

> S. 1134 is not intended to change the practice of having sequential or closely related orders issued in the course of the same or interrelated administrative proceedings treated as 'the same order' and reviewed by the circuit court reviewing the initial order.
>
> The selected court will retain its existing power to transfer all review proceedings dealing with the same order. Thus, S. 1134 does not, in any way, prevent the selected court from transferring the challenges to the agency order to a more proper circuit '[f]or the convenience of the parties in the interest of justice' 18 U.S.C. 2112(a)(5) (as redesignated by S. 1134)

S, Rep. 100-263 (1987), available at 1987 WL 61562 (citations omitted).

It is no less important in this regard what Congress did not do. Had it wished to otherwise, Congress could have limited preexisting transfer authority or amended 28 U.S.C. §2343 to remove the option available to all petitioners to seek review in

the D.C. Circuit without regard to their principal place of business. It did neither.

The Court should also avoid the distracting suggestion that there is something improper about parties choosing to seek review in one circuit or another. Benton has not disputed the Opponents' right to seek review in the Fifth, Eighth and Eleventh Circuits as well as this Court, albeit even where their participation at the was limited to a single pleading.[4] However, it is disingenuous then to argue that seeking to transfer to the most appropriate circuit is somehow impermissible forum-shopping. To the extent that the Court wishes to look to the "convenience of the parties" factor in Section 2112(a),[5] it is worth nothing that four of the Opponents filed in the D.C. Circuit, 19 of the 21 signatories to the stay motion are based in D.C, and that neither Sixth Circuit petitioner has local counsel.[6]

Benton has not suggested that grant of transfer motions is routine or frequent. Transfer of opposed motions is, however, more common than Opponents claim. Joint Opp., p. 12. Because transfer is uncommon, it may be true, albeit irrelevant,

---

[4] *See, e.g.*, Reply Comments of Ohio Telecom Association, January 17, 2024, available at https.://www.fcc.gov/ecfs/document/10117109158058/1.

[5] The Administrative Conference report said that "[I]n most appeals from nationally applicable administrative action, the convenience of the parties is not a relevant consideration." McGarity, *supra*, p. 370.

[6] The connection to a Circuit is established by the locus of the principal place of business. 28 U.S.C. §2343. The number of employees and customers situated in a circuit has nothing to do with the convenience of the parties.

that this Circuit has not itself previously transferred a post-lottery case among the dozen or so it has administered, *id.*, but that does not affect the statutory standard this Court must apply.[7] Indeed, where, as here, circumstances justify the relatively rare finding that transfer is in the interest of justice, cases are transferred.[8]

These secondary questions distract from what is genuinely at issue here, which is that the interests of justice strongly compel transfer of these cases to the District of Columbia. No matter how Opponents attempt to trivialize it, Joint Opp., p. 12, the decision under review involved action on the remand from a sister circuit and will necessitate revisiting prior circuit precedent in four sequential cases, as well as a fifth case currently in abeyance. That, plus the D.C. Circuit's extensive expertise and history with the matters at issue, will preclude needless duplication of effort if this court were to have to dig into these complex issues for the first time, and reduce the possibility of incompatible decisionmaking.

The Opponents place their greatest weight on their claim that there is little

---

[7] Oddly, Opponents cite to a report of the JPML that merely lists cases where lotteries were conducted, but not their ultimate disposition. *Id.*, p. 12, n. 1.

[8] *See, e.g., Order, Howard Stirk Holdings, LLC v. FCC*, No. 14-1090 (D.C. Cir. November 24, 2015); *Order. Remi Retail Communications LLC v. FCC*, No. 05-1629 (3rd Cir. March 29, 2005); *Order, Surfrider Foundation v. EPA*, No. 04-73782 (9th Cir. December 14, 2004); *Eschelon Telecom, Inc. v. FCC*, 345 F.3d 682, 685 (8th Cir. 2003); *Order, Beverly California Corp. v. NLRB*, No. 98-6416 (3rd Cr. January 8, 1999).

connection to prior D.C. Circuit cases because a central part of their challenges is based on the Supreme Court's recent creation of the major questions doctrine. They take note of then-Judge Kavanaugh's dissent on the basis of his view of the law as of that time, both in their opposition to transfer and in their motion for stay. See Joint Motion For Stay, June 10, 2024, pp. 2,6,9,12,13,22.

It is true, as Opponents say, Joinr Opp. p. 22, that the "D.C. Circuit did not have the benefit of the Supreme Court's recent major-questions cases and thus did not decide whether the current major-questions doctrine applies here." However, that hardly wipes the precedential slate clean. To the contrary, the entire membership of the D.C. Circuit considered the same briefs and same arguments that their former colleague did en banc. Judge Srinivasan, joined by Judge Tatel, responded directly and at length. *United States Telecom Ass'n v. FCC*, 855 F.3d 381, 382-388 (D.C. Cir. 2017). This exchange involved analysis of the very same circuit precedent and factual and legal history that impelled then-Judge Kavanaugh to dissent. Opponents cannot have it both ways; then-Judge Kavanaugh's dissenting posture required the judges on the D.C. Circuit to delve into the nature of the Congressional delegation of power over telecommunications services. Thus, the major questions issue would not arrive at the D.C. Circuit in pristine form; even if the legal framework for analysis of the current case is now somewhat different - a

question yet to be resolved - it cannot be said that the members of the D.C. Circuit did not have precedent to apply and extensive additional background from that rehearing phase.[9]

Respectfully submitted,

/s/ Andrew Jay Schwartzman

Andrew Jay Schwartzman
525 Ninth Street, NW
Seventh Floor
Washington, DC 20004
(202) 241-2408
AndySchwartzman@gmail.com

June 20, 2024

---

[9] The D.C. Circuit also has relevant precedent and experience with respect to the statute at issue in Benton's petition for review in No. 24-3407. *See, e.g.*, *AT&T, Inc. v. FCC*, 886 F.3d 1236 (D.C. Cir. 2018); *Rural Cellular Ass'n v. FCC*, 685 F.3d 1083 (D.C. Cir. 2012); *Vt. Pub. Serv. Bd. v. FCC*, 661 F.3d 54 (D.C. Cir. 2011); *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095 (D.C. Cir. 2009).

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Reply to Joint Opposition of Ohio Telecom Association, et al. To Motions for Transfer complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 1662 words. I further certify that this Motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Corel WordPerfect in Times New Roman 14-point font.

    Respectfully submitted,

    /s/ Andrew Jay Schwartzman

    Andrew Jay Schwartzman
    525 Ninth Street, NW
    Seventh Floor
    Washington, DC 20004
    (202) 241-2408
    AndySchwartzman@gmail.com

June 20, 2024

## CERTIFICATE OF SERVICE

I certify that on this 20th day of June, 2024, I electronically filed the foregoing Reply to Joint Opposition of Ohio Telecom Association, et al. To Motions for Transfer with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the Court's appellate CM/ECF system. I further certify that service was accomplished on all participants in the case via the Court's CM/ECF system.

Respectfully submitted,

/s/ Andrew Jay Schwartzman

525 Ninth Street, NW
Seventh Floor
Washington, DC 20004
(202) 241-2408
AndySchwartzman@gmail.com