No. 24-7000 (lead), 24-3449, 24-3450, 24-3497,
24-3508, 24-3510, 24-3511, 24-3519, 24-3538

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

IN RE: MCP NO. 185: OPEN INTERNET RULE (FCC 24-52)

OHIO TELECOM ASSOCIATION, ET AL.,
*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,
*Respondents*.

On Petitions for Review of an Order of
the Federal Communications Commission

# JOINT MOTION TO INTERVENE
# IN SUPPORT OF RESPONDENTS

Pursuant to 28 U.S.C. § 2348 and Federal Rule of Appellate Procedure 15(d), Free Press, New America's Open Technology Institute (OTI), and Public Knowledge (collectively, the Public Interest Groups) respectfully move to intervene on the side of Respondents—the Federal Communications Commission (the FCC or Commission) and the United States of America.

1

Free Press, OTI,[1] and Public Knowledge are nonprofit organizations committed to an open, accessible, and affordable internet for all. 28 U.S.C. § 2348 allows the Public Interest Groups to intervene as of right.[2] The Public Interest Groups are "part[ies] in interest in the proceeding . . . whose interests will be affected if an order of the agency is or is not . . . set aside," and accordingly "may appear as parties thereto of their own motion and as of right." 28 U.S.C. § 2348. Each movant has such interests implicated in this litigation.[3]

Petitioners here challenge the Commission's *Safeguarding and Securing the Open Internet Order*, FCC 24-52, 39 FCC Rcd — (rel. May

---

[1] OTI is a program at New America, which is a 501(c)(3) organization.

[2] The Sixth Circuit has granted motions to intervene under 28 U.S.C. § 2348 in cases challenging FCC action, where the motions had similar brief statements of how the outcome of the case will affect the movants. *See, e.g.*, Benton, NDIA, & Media Justice Mot. to Intervene, *Consumers' Rsch. v. FCC*, No. 21-3886 (6th Cir. Nov. 1, 2021), ECF No. 15; USTelecom, NTCA, & CCA Joint Mot. to Intervene, *Consumers' Rsch. v. FCC*, No. 21-3886 (6th Cir. Nov. 1, 2021), ECF No. 17; Order, *Consumers' Rsch. v. FCC*, No. 21-3886 (6th Cir. Nov. 18, 2021) (granting motions to intervene), ECF No. 27; *see also* Clerk's Order, *U.S. Telecom Ass'n v. FCC*, No. 15-1063 (D.C. Cir. May 19, 2015) (granting the Public Interest Groups' motions for leave to intervene).

[3] In determining whether to allow an individual to intervene in a proceeding, the Sixth Circuit applies a "rather expansive notion of the interest sufficient to invoke intervention of right." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

7, 2024) (the *Order*), which adopts rules to prevent conduct by broadband internet access service (BIAS) providers that could threaten an open internet, such as blocking, throttling, and paid prioritization. By reclassifying BIAS under Title II, the *Order* requires BIAS providers to ensure that their practices are just and reasonable. This responsibility in turn will protect free expression and innovation on the internet because BIAS providers will not be able to unreasonably interfere with consumers' access to internet websites, applications, and other destinations online. It will also promote broadband deployment, adoption, resiliency, and competition.

The Public Interest Groups have an interest in these challenges because the open internet, as promoted by the *Order*, is central to their organizational missions. Among its pillars of work, Free Press "focus[es] on saving Net Neutrality, [and] achieving affordable internet access for all." *About*, Free Press, https://www.freepress.net/about (last visited June 15, 2024). Public Knowledge similarly explains its mission as "promot[ing] freedom of expression, an open internet, and access to affordable communications tools and creative works." *Public Knowledge*, https://publicknowledge.org (last visited June 15, 2024). And OTI "works

3

at the intersection of technology and policy to ensure that every community has equitable access to digital technology and its benefits" by promoting "universal access to communications technologies that are both open and secure" with focus areas including "net neutrality, broadband access, and consumer privacy." *Open Technology Institute - About*, New America, https://www.newamerica.org/oti/about (last visited June 15, 2024). *Compare id.*, *with Order* ¶ 10 ("These sources of authority work to safeguard and secure Internet openness to ensure that the Internet continues to grow as a platform for competition, free expression, and innovation; a driver of economic growth; and an engine of the virtuous cycle of broadband deployment, innovation, and consumer demand.").

To this end, all three organizations actively participated in the *Safeguarding and Securing the Open Internet* proceeding—filing comments, reply comments, and other documents in the docket to guide the Commission's policy decisions, and meeting repeatedly with FCC staff and commissioners to advocate for their policy positions. *See, e.g.*, Free Press, Comments on Notice of Proposed Rulemaking on Safeguarding and Securing the Open Internet (Dec. 14, 2023), https://www.fcc.gov/ecfs/document/12150937720322/1; Public

Knowledge, Comments on Notice of Proposed Rulemaking on Safeguarding and Securing the Open Internet (Dec. 14, 2023), https://www.fcc.gov/ecfs/document/12141254615295/1; New America's Open Technology Institute, Comments on Notice of Proposed Rulemaking on Safeguarding and Securing the Open Internet (Dec. 14, 2023), https://www.fcc.gov/ecfs/document/1215760807084/1; *cf. Mich. State AFL-CIO*, 103 F.3d at 1245-47 (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983)) (identifying as instructive Ninth Circuit precedent finding sufficient interest allowing intervention as of right where a public interest group had supported government defendant in the administrative process leading up to government action). The *Order* cites each of the Public Interest Group's input dozens of times.

Furthermore, these organizations rely on an open internet for their own work. Each relies on an open internet to communicate with its allies, activists, lawmakers, and the public to further its mission. In addition to their own reliance on an open internet, some of these organizations, such as Free Press, represent members whose businesses, education, or other activity rely on the ability to access an open internet.

5

The Public Interest Groups' interests in the case may be impaired absent intervention because their interests are directly implicated by the presence of an open internet and enforcement of safeguards to preserve it. Their interests are also not adequately represented by the original parties, where it is sufficient "to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Mich. State AFL-CIO*, 103 F.3d at 1247. Here, the Public Interest Groups also possess supplemental experience and research pertinent to the factual inquiries in this proceeding independent of the Commission, and intend to rely on such in their arguments.

Additionally, this Court has held that it is "not required to show that the representation will *in fact* be inadequate," only that there is that potential. *Id.* (emphasis added); *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999). With an upcoming election and possible administration change, it is possible that the Commission may not take the same position it currently does now by the time this case is argued on the merits—and in that case, the lacuna between the agency's interests and the movants' would only widen.

Finally, in addition to filing comments in the instant proceeding, both OTI and Public Knowledge filed separate Petitions for Reconsideration of the previous internet classification Order. *See Order* ¶ 22 n.55. These Petitions were partially granted as part of the Order challenged here. *Id.* ¶ 691. OTI and Public Knowledge therefore also have a unique interest in defending the successful outcome of their Petitions.

Because Free Press, OTI, and Public Knowledge's missions and work are directly implicated in the outcome of this Court's review of the *Order*, they are interested parties under 28 U.S.C. § 2348 and thus may intervene as of right in this proceeding.

The Public Interest Group's Motion is timely under the Federal Rules of Appellate Procedure, which requires those who wish to intervene to file within thirty days after the petition for review is filed.[4] F.R.A.P.

---

[4] The Public Interest Groups note that their filing in this Court is not an endorsement of various petitioners' position that this matter should be heard in the Sixth Circuit. Rather, the Public Interest Groups believe, as the Commission's motion for transfer discusses, that this matter should be transferred to the D.C. Circuit. *See* Resp'ts' Mot. to Transfer. The Public Interest Groups' filing here merely reflects a consideration for timeliness, and for preventing any prejudice to the original parties by filing any later, such as after a ruling is made on the motion for transfer.

15(d). This Motion, filed June 26, 2024, is within thirty days of the filing of the first petitions for review of the Order. *See* Pet. for Review, *Ohio Telecom Ass'n v. FCC*, No. 24-3449 (6th Cir. May 28, 2024); Pet. for Review, *Ohio Cable Telecomm. Ass'n v. FCC*, No. 24-3450 (6th Cir. May 28, 2024); Pet. for Review, *Tex. Cable Ass'n v. FCC*, No. 24-2092 (5th Cir. May 28, 2024); Pet. for Review, *Mo. Internet & Television Ass'n v. FCC*, No. 24-2092 (8th Cir. May 28, 2024); Pet. for Review, *Fla. Internet & Television Ass'n v. FCC*, No. 24-11701 (11th Cir. May 28, 2024). Having timely filed this motion and as a party in interest in the proceeding entitled to intervene "as of right," the Public Interest Groups respectfully request that their Motion be granted.

Even absent a statutory right to intervene, the Court should permit the Public Interest Groups to intervene under FRCP Rule 24(b). "To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). "Once these two requirements are established, the district [or appellate] court must then balance undue delay and prejudice

to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id.*

These circumstances merit permissive intervention. As discussed in the previous section, this motion is timely. Because litigation on this matter has just begun, there is also no prejudice to the original parties. Nor are there unusual circumstances that would militate against intervention—rather, these parties have intervened previously in matters such as this one. *See, e.g.*, Joint Brief for Intervenors Free Press, Open Technology Institute | New America, Public Knowledge, *et al.*, in Support of the FCC, *U.S. Telecom Ass'n v. FCC*, No. 15-1063 (D.C. Cir. Sept. 21, 2015). And the movants' claim that BIAS is properly classified under Title II is a question central to this proceeding.

For the foregoing reasons, the Court should grant Free Press, OTI, and Public Knowledge's motion to intervene in support of Respondents.

Dated: June 26, 2024

YANNI CHEN
MATTHEW F. WOOD
FREE PRESS
1025 Connecticut Avenue NW
Suite 1110
Washington, DC 20036
Telephone: (202) 265-1490
ychen@freepress.net
mwood@freepress.net
*Counsel for Free Press*

RAZA PANJWANI
OPEN TECHNOLOGY INSTITUTE
NEW AMERICA
740 15th Street NW
Suite 900
Washington, DC 20005
Telephone: (202) 986-2700
panjwani@opentechinstitute.org
*Counsel for OTI*

JOHN BERGMAYER
HAROLD FELD
PUBLIC KNOWLEDGE
1818 N Street NW
Suite 410
Washington, DC 20036
Telephone: (202) 861-0020
john@publicknowledge.org
*Counsel for Public Knowledge*

Respectfully submitted,

/s/ Kevin K. Russell
KEVIN RUSSELL
*Counsel of Record*
GOLDSTEIN, RUSSELL & WOOFTER LLC
1701 Pennsylvania Avenue NW
Suite 200
Washington, DC 20006
Telephone: (202) 240-8433
krussell@goldsteinrussell.com
*Counsel for Free Press, OTI, and Public Knowledge*

10

# CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 1,675 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).
2. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface in Century Schoolbook 14-point font.

<u>/s/  Kevin K. Russell</u>
Kevin K. Russell

# CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on June 26, 2024. I certified that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Kevin K. Russell
Kevin K. Russell
