<b>Nos. 24-7000 (lead), 24-3449, 24-3450, 24-3497,<br>
24-3508, 24-3510, 24-3511, 24-3519, and 24-3538</b>

<b>IN THE UNITED STATES COURT OF APPEALS<br>
FOR THE SIXTH CIRCUIT</b>

IN RE: MCP NO. 185; OPEN INTERNET RULE (FCC 24-52)
OHIO TELECOM ASSOCIATION, et al.,
*Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,
*Respondents.*

<b>UNOPPOSED MOTION TO INTERVENE<br>
IN SUPPORT OF RESPONDENTS</b>

Pursuant to 28 U.S.C. §2348 and Federal Rule of Appellate Procedure 15(d), the Benton Institute for Broadband & Society ("Benton") moves to intervene in support of Respondents in Docket Numbers Nos. 24-7000, 24-3449, 24-3450, 24-3497, 24-3508, 24-3510, 24-3511, 24-3519, and 24-3538. Counsel for Petitioners in those cases ("Industry Petitioners") state that they will take no position on this motion. Counsel for Respondents state that they consent to to the grant of this motion..

The consolidated petitions for review before the Court seek review of the FCC's decision in *Safeguarding and Securing the Open Internet Order*, FCC 24-52 (released May 7, 2024); 89 Fed. Reg. 45404 (May 22, 2024)("*Order*"). Benton is the Petitioner in Docket No. 24-3507, in which it challenges one aspect of *Order*. It does not seek to intervene in Nos. 24-3504 and 24-3517, because it is

evident that the Petitioners in those Docket are similarly situated with Benton as to the issue on which they seek review.

Although, in Docket 24-3507, Benton has sought review of one element of the agency decision at issue in these cases, it supports all other parts of that order and seeks to intervene here in support of the federal Respondents as to those parts of the order challenged in the above-captioned matters.

This motion is timely because it is being filed within 30 days of the docketing of the affected cases and thus is within the 30-day time period set out in Federal Rule of Appellate Procedure 15(d).

Benton meets the statutory requirements to intervene as a matter of right under 28 U.S.C. §2348.[1] Benton participated in the proceedings below,[2] and is a party in interest that will be affected by the *Order*.

The Industry Petitioners seek review of the FCC's decision to reclassify broadband internet access service under Title II of the Communications Act of 1934. In that order, the FCC also acted on four petitions for reconsideration of an earlier agency decision addressing issues remanded by the U.S. Court of Appeals for the District of Columbia Circuit in *Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019).

---

[1] *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997),
[2] *See, e.g.*, Comments of Benton Institute for Broadband & Society, December 14, 2023, available at https://www.fcc.gov/ecfs/document/121485863127/1

*Order*, pp. 398-403, ¶¶683-691. Benton was among the parties that had sought reconsideration.

As its name suggests, Benton's primary mission includes expansion of broadband deployment and adaption. It describes it mission as follows:

> Our goal is to bring open, affordable, high-performance broadband to all people in the U.S. to ensure a thriving democracy. Benton believes that communications policy—rooted in the values of access, equity, and diversity—has the power to deliver new opportunities and strengthen communities.

Among other things, Benton operates programs in a number of states, including Pennsylvania, Kansas, Illinois and Tennessee in which it works with, and advises, local residents on promoting broadband deployment and adoption. Benton also serves as an information source on telecommunications policy by commissioning and distributing research and opinion essays on telecommunications policy and publishing "Headlines," a widely-read daily newsletter that aggregates news about developments in telecommunications. All of these publications are made available on Benton's website, which is an important hub for those interested in digital technology policy.

Benton will benefit from successful implementation and enforcement of those rules, and will be harmed if they are reversed or vacated. Open internet principles will allow broader use of digital technologies and accelerate their adoption, and will

thereby assist the organizations that Benton supports in their efforts to promote broadband deployment. The organizations that Benton supports, particularly those in rural areas, rely on pubic safety organizations that will be better able to serve them under the new rules. Benton works especially closely with "anchor institutions" such as schools, libraries and health providers that need additional cybersecurity protection provided by the new rules. If the order under review is reversed or vacated as a result of the grant of all or portions of the above-captioned petitions for review, Benton will have to expend additional institutional resources to combat discriminatory practices that impede or preclude additional broadband deployment and adoption.

Benton's ability to continue to publish and distribute research will also be assisted by affirmance of the *Order*. That work depends on the broadest possible access to Benton's website; and Benton thus faces harm from the possibility that its internet access will be blocked or throttled. Because Benton often, but not always, takes policy positions that are adverse to internet service providers, there is an increased possibility that its website and distribution will be the subject of content-based discrimination; the new rules provide protection against such practices.

Moreover, as noted above, the order under review resolved Benton's petition for reconsideration of the D.C. Circuit's *Mozilla* remand, essentially granting it in

material respects. Benton would thus be harmed by reversal or vacatur of the *Order*, since that would also have the effect of denying that petition for reconsideration.

The government Respondents cannot fully and adequately represent Benton's interests. Benton has experience and background that the Respondents do not have and that it can bring to bear in its briefing. It also has a particular interest in protecting its position with respect to the issues on remand from *Mozilla* that is broader than that of the Respondents.

Accordingly, Benton respectfully asks that the Court grant this motion to intervene in support of Respondents and grant all such other relief as may be just and proper.

Respectfully submitted,

/s/ Andrew Jay Schwartzman

Andrew Jay Schwartzman
525 Ninth Street, NW
Seventh Floor
Washington, DC 20004
(202) 241-2408
AndySchwartzman@gmail.com

June 27, 2024

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing Unopposed Motion to Intervene in Support of Respondents complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 916 words. I further certify that this Motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Corel WordPerfect in Times New Roman 14-point font.

    Respectfully submitted,

    /s/ Andrew Jay Schwartzman

    Andrew Jay Schwartzman
    525 Ninth Street, NW
    Seventh Floor
    Washington, DC 20004
    (202) 241-2408
    AndySchwartzman@gmail.com

June 27, 2024

# CERTIFICATE OF SERVICE

I certify that on this 27th day of June, 2024, I electronically filed the foregoing Unopposed Motion to Intervene in Support of Respondents with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the Court's appellate CM/ECF system. I further certify that service was accomplished on all participants in the case via the Court's CM/ECF system.

    Respectfully submitted,

    /s/ Andrew Jay Schwartzman

    525 Ninth Street, NW
    Seventh Floor
    Washington, DC 20004
    (202) 241-2408
    AndySchwartzman@gmail.com