**Nos. 24-7000 (lead), 24-3449, 24-3450, 24-3497,
24-3508, 24-3510, 24-3511, 24-3519, and 24-3538**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

IN RE: MCP NO. 185; OPEN INTERNET RULE (FCC 24-52)

OHIO TELECOM ASSOCIATION, et al.,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*.

On Petitions for Review of an Order of
the Federal Communications Commission

## RESPONDENTS' SECOND SUPPLEMENTAL BRIEF
## IN OPPOSITION TO MOTION FOR STAY PENDING REVIEW

In accordance with the Court's July 12 order, respondents submit this supplemental brief addressing the application to this case of *stare decisis* and *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005) (*Brand X*).

1. *Brand X* remains binding on this Court under established principles of *stare decisis* as to all issues the Supreme Court decided in that case.

*First*, *Brand X*'s holding that the Communications Act gives the FCC authority to classify and regulate broadband service, 545 U.S. at 980–81, 991–92, 1002–03, forecloses petitioners' arguments that the major-questions doctrine deprives the agency of that authority. *See Order* ¶ 264 & nn.1105–1111; *U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 383–88 (D.C. Cir. 2017) (*U.S. Telecom II*) (Srinivasan, J., concurring in denial of rehearing). *Brand X* "is clear" that the Act "gives [the] agency broad power to enforce all provisions of the statute." *Gonzales v. Oregon*, 546 U.S. 243, 258–59 (2006) (applying the major-questions doctrine, *id.* at 267–68, yet distinguishing *Brand X*). Indeed, the major-questions doctrine gave the Court no pause in *Brand X* "even though several parties expressly raised the issue" in that case. *Order* ¶ 254 & n.1064 (citing Br. for Resp'ts Earthlink, Inc., et al., *Brand X*, 535 U.S. 967 (2005) (Nos. 04-277 & 04-281), 2005 WL 435900, at *33–35).[1]

*Second*, *Brand X* reasoned that the proper statutory classification of broadband turns on the word "offering": whether the underlying transmission service and any applications offered with or through that

---

[1] In any event, even apart from *Brand X* and *stare decisis*, petitioners are wrong that the major-questions doctrine poses any obstacle to the *Order* here, as we have previously explained. *See* Resp'ts' Supp. Br. Regarding *Loper Bright* 7–8; Stay Opp. 19–22; *Order* ¶¶ 252–264.

service amount to separate bundled offerings or a single integrated offering. 545 U.S. at 991. "That question turns not on the language of the Act, but on the factual particulars of how Internet technology works and how it is provided," *ibid.*—an issue that appropriately calls for "use of [the Commission's] expert policy judgment to resolve these difficult questions," *id.* at 1003. Here, the Commission made detailed expert findings as to those predicate factual and technical issues. *See* Resp'ts' Supp. Br. Regarding *Loper Bright* 10–11; Stay Opp. 12–16. Under *Loper Bright*, this is precisely the situation where "[c]areful attention to the judgment of the [expert agency] may help inform [the Court's] inquiry." *Loper Bright Enters. v. Raimondo*, No. 22-451, 603 U.S. ---, slip op. at 35 (U.S. June 28, 2024).[2]

*Third*, *Brand X* stated that its "conclusion that it is *reasonable* * * * to classify cable modem service solely as an 'information service' leaves untouched [prior decisions] holding that the Commission's [Title I]

---

[2] *Accord Loper Bright*, slip op. at 25 ("[A]lthough an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise. Such expertise has always been one of the factors which may give an Executive Branch interpretation particular power to persuade, if lacking power to control.") (citations, internal quotation marks, and brackets omitted).

interpretation is not the *best* reading of the statute," as the Ninth Circuit previously held in *Portland* and as the FCC previously understood the statute in the *Advanced Services Order*. 545 U.S. at 985–86 (citing *AT&T Corp. v. City of Portland*, 216 F.3d 871, 878 (9th Cir. 2000)).[3] Indeed, *Brand X* specifically recognized that the Title I approach challenged there was a change in position from the original, contemporaneous understanding in the *Advanced Services Order* that broadband transmission is a Title II telecommunications service. *Id.* at 1000–02 (citing the *Advanced Services Order*, 13 FCC Rcd. 24012 ¶¶ 35–36 (1998)); *see also id.* at 981–82 (acknowledging that a Title I interpretation was "inconsistent with [the Commission's] past practice"); Stay Opp. 4–6 (recounting this history).

**2.** If petitioners disagree with *Brand X* on these points—or even if they believe that other decisions might support a different result—this Court nonetheless remains bound by *Brand X*. It is solely the Supreme Court's prerogative to reconsider or overrule its own precedents. *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)

---

[3] That broadband service thrived under Title II from 2000 to 2005 in the Ninth Circuit—the epicenter of America's internet economy—further undercuts petitioners' claims that any serious harm is likely to occur if their stay request is denied.

("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *see* Resp'ts' Supp. Br. Regarding *Loper Bright* 6–8; Stay Opp. 19. Even if a party contends that "the doctrinal landscape undergirding" a Supreme Court decision "has shifted significantly since it was decided," the decision "remain[s] binding on this Court." *Ohio v. Becerra*, 87 F.4th 759, 765 (6th Cir. 2023). "In other words, it is for the Supreme Court to tell the courts of appeals when the Court has overruled one of its decisions, not for the courts of appeals to tell the Court when it has done so implicitly." *Taylor v. Buchanan*, 4 F.4th 406, 408–09 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 1441 (2022).[4]

**3.** *Brand X*'s decision to uphold the Commission's prior treatment of broadband as a Title I information service, however, does not resolve the dispute here. The Court in *Brand X* concluded that the Title I

---

4   *See also, e.g.*, *Thompson v. Mariette Educ. Ass'n*, 972 F.3d 809, 811–12, 813–14 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2721 (2021); *United States v. Miller*, 982 F.3d 412, 433–34 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2797 (2021).

approach reflected "a permissible reading of the Communications Act under the *Chevron* framework." 545 U.S. at 986. And *Loper Bright* makes clear that, if the Commission had adhered to the Title I approach, *Brand X* would be entitled to continuing *stare decisis* effect in any future judicial challenge to that approach, even though *Brand X* was decided under the now-rejected *Chevron* standard. Slip op. at 34–35. The present dispute, however, arises from the Commission's new decision to instead adopt a Title II approach based on its fresh conclusion that the Title II approach reflects the best reading of the Act, particularly in light of how broadband operates and is offered today. Neither *Brand X* nor *Loper Bright* speaks to the correctness of that interpretive judgment or to the lawfulness of the Commission's new decision.

In other words, as our previous supplemental brief explained, the question at issue here is not whether a Title I approach remains permissible, but instead whether, in adopting a Title II approach, the Commission correctly determined that Title II represents the best reading of the Act. *See* Resp'ts' Supp. Br. Regarding *Loper Bright* 4–6. *Brand X* did not resolve the question of whether Title I or Title II represents the best reading of the Act. On the contrary, the *Brand X*

majority expressly stated that its "conclusion that it is *reasonable* * * * to classify cable modem service solely as an 'information service' leaves untouched *Portland*'s holding that the Commission's [Title I] interpretation is not the *best* reading of the statute." *Brand X*, 545 U.S. at 985–86.[5]

To be sure, *Loper Bright* declined to "call into question prior cases that relied on the *Chevron* framework," and instead instructed that "[t]he holdings of those cases that specific agency actions are lawful * * * are still subject to statutory *stare decisis*." Slip op. at 34–35. Accordingly, if the Commission had sought to adhere to its preexisting Title I approach, and an opposing party then argued that position was unlawful, *Brand X*'s holding that Title I was "lawful"—that is, *permissible*—would "still [be] subject to statutory *stare decisis* despite" *Loper Bright*. *Ibid*. By affording "statutory *stare decisis*" to "the holdings of [past] cases that

---

[5] The three dissenting Justices who *did* opine on the best reading, however, agreed with our position here that the statute is most naturally read to treat broadband transmission as a Title II telecommunications service. 545 U.S. at 1005–14 (Scalia, J., dissenting, joined by Souter and Ginsburg, JJ.); *see also U.S. Telecom II*, 855 F.3d at 385 (Srinivasan, J., concurring in denial of rehearing) ("All nine Justices [in *Brand X*] recognized the agency's statutory authority to institute 'common-carrier regulation of all ISPs,' with some Justices even concluding that the Act left the agency with no other choice.").

specific agency actions are lawful," the Court ensured that its decision in *Loper Bright* would not permit new challenges to preexisting agency interpretations that have already been upheld by the courts.

Here, however, the Commission undertook a fresh look at the statute—informed by comprehensive new notice and comment and an updated record—and issued a new determination that broadband is best understood as a Title II telecommunications service. That fresh determination is lawful under *Loper Bright* because it represents the best reading of the Communications Act in accordance with the traditional tools of statutory construction. *See* Resp'ts' Supp. Br. Regarding *Loper Bright* 2–4; Stay Opp. 12–17. That adhering to a Title I interpretation could *also* have been permissible (despite not being the best reading of the statute) by virtue of *Brand X* and statutory *stare decisis* does not address, much less cast any doubt on, the lawfulness of the Title II approach that the Commission adopted here.

Petitioners are therefore incorrect to suggest (Pet'rs' Supp. Br. Regarding *Loper Bright* 14) that the Commission's new classification here is in any way inconsistent or incompatible with *Brand X*. On the contrary, it is petitioners' implicit suggestion that *Brand X* somehow *forbids* the Commission from treating broadband as a Title II telecommunications

- 8 -

service that would be at odds with everything the Court wrote in *Brand X*—including the Court's statements that the Communications Act "leaves to the Commission to resolve in the first instance" how to classify and regulate broadband, 545 U.S. at 991; that its decision "leaves federal telecommunications policy in this technical and complex area to be set by the Commission, not by warring analogies," *id.* at 992; and that it was "leav[ing] untouched *Portland*'s holding that [a Title I] interpretation is not the *best* reading of the statute," *id.* at 985–86.[6]

*Brand X* thus disclaimed any intent to mandate a Title I approach as the only permissible interpretation of the Communications Act (let alone the best reading). Likewise, nothing in *Loper Bright*'s recognition that *stare decisis* preserves prior rulings "that specific agency actions are lawful" even when not the best reading of a statute, slip op. at 34,

---

[6] Petitioners' implicit view would also be at odds with the D.C. Circuit's holding in *U.S. Telecom* that classifying broadband as a Title II telecommunications service in 2015 was a lawful interpretation of the Act—a decision that is likewise "still subject to statutory *stare decisis*" under *Loper Bright*, slip op. at 34; *see U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 701–11 (D.C. Cir. 2016), *reh'g denied*, 855 F.3d 381 (D.C. Cir. 2017), *cert. denied*, 139 S. Ct. 454 (2018). It would make no sense to say that according statutory *stare decisis* to *Brand X* somehow renders unlawful the D.C. Circuit's holding that a Title II approach is lawful under *Brand X*.

purports to enshrine a permissible but inferior reading as the only lawful meaning or to foreclose an agency from deciding to follow the best reading of a statute as Congress wrote it. Insofar as petitioners now seek to forever freeze in time the former Title I approach, they are not asking the Court to respect the *Brand X* decision under principles of *stare decisis*, but instead to countermand it.

\* \* \*

For the foregoing reasons, and those stated in our stay opposition and in our previous supplemental brief, the motion for stay pending review should be denied.

Dated:  July 19, 2024

Respectfully submitted,

/s/  Scott M. Noveck

P. Michele Ellison
  *General Counsel*

Jacob M. Lewis
  *Deputy General Counsel*

Sarah E. Citrin
  *Deputy Associate General Counsel*

/s/  Andrew W. Chang

Daniel E. Haar
Nickolai G. Levin
Robert B. Nicholson
Andrew W. Chang
  *Attorneys*

Scott M. Noveck
  *Counsel*

FEDERAL COMMUNICATIONS
  COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave. NW
Washington, DC 20530

*Counsel for Respondent
  United States of America*

*Counsel for Respondent Federal
  Communications Commission*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. With respect to the type-volume limit of Fed. R. App. P. 27(d)(2) and this Court's order of July 12, 2024, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☒ this document contains 2,036 words, *or*

   ☐ this document uses a monospaced typeface and contains ____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook, *or*

   ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

   > /s/ *Scott M. Noveck*
   > Scott M. Noveck
   > *Counsel for Respondents*