Nos. 24-7000 (lead), 24-3449, 24-3450, 24-3497,
24-3508, 24-3510, 24-3511, 24-3519, 24-3538

# In the United States Court of Appeals for the Sixth Circuit

---

IN RE: MCP NO. 185: FEDERAL COMMUNICATIONS COMMISSION,
IN THE MATTER OF SAFEGUARDING AND SECURING THE OPEN
INTERNET, DECLARATORY RULING, ORDER, REPORT AND ORDER,
AND ORDER ON RECONSIDERATION, FCC 24-52, 89 FED. REG. 45404,
PUBLISHED MAY 22, 2024

---

On Petitions for Review

---

**SUPPLEMENTAL BRIEF OF OHIO TELECOM ASSOCIATION, USTELECOM – THE BROADBAND ASSOCIATION, OHIO CABLE TELECOMMUNICATIONS ASSOCIATION, NCTA – THE INTERNET & TELEVISION ASSOCIATION, CTIA – THE WIRELESS ASSOCIATION, WIRELESS INTERNET SERVICE PROVIDERS ASSOCIATION, ACA CONNECTS – AMERICA'S COMMUNICATIONS ASSOCIATION, FLORIDA INTERNET & TELEVISION ASSOCIATION, MCTA – THE MISSOURI INTERNET & TELEVISION ASSOCIATION, AND TEXAS CABLE ASSOCIATION**

---

HELGI C. WALKER
JONATHAN C. BOND
RUSSELL B. BALIKIAN
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
(202) 955-8500

*Counsel for CTIA – The Wireless Association*

JEFFREY B. WALL
MORGAN L. RATNER
ZOE A. JACOBY
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006
(202) 956-7500

*Counsel for Ohio Telecom Association, USTelecom – The Broadband Association, and NCTA – The Internet & Television Association*

*(Additional counsel on next page)*

MATTHEW A. BRILL
MATTHEW T. MURCHISON
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Ohio Cable
Telecommunications Association,
NCTA – The Internet & Television
Association, Florida Internet &
Television Association, MCTA – The
Missouri Internet & Television
Association, and Texas Cable
Association*


JEFFREY A. LAMKEN
RAYINER I. HASHEM
JENNIFER E. FISCHELL
JACKSON A. MYERS
MOLOLAMKEN LLP
600 New Hampshire Avenue NW,
Suite 500
Washington, DC 20037
(202) 556-2000

*Counsel for ACA Connects –
America's Communications
Association*

MAXWELL F. GOTTSCHALL
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

*Counsel for Ohio Telecom
Association, USTelecom – The
Broadband Association, and
NCTA – The Internet & Television
Association*


THOMAS M. JOHNSON, JR.
JOSHUA S. TURNER
JEREMY J. BROGGI
BOYD GARRIOTT
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

STEPHEN E. CORAN
LERMAN SENTER PLLC
2001 L Street NW, Suite 400
Washington, DC 20036
(202) 429-8970

*Counsel for WISPA – The
Association for Broadband Without
Boundaries*

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................1

ARGUMENT .......................................................................................3

I.    *BRAND X* HELD THAT THE BROADBAND SERVICE
      AT ISSUE WAS LAWFULLY CLASSIFIED AS A
      SINGLE, INTEGRATED INFORMATION SERVICE ......................3

II.   AFTER *LOPER BRIGHT*, THE STATUTORY HOLDING
      OF *BRAND X* IS A CONTROLLING PRECEDENT THAT
      RESOLVES THIS CASE..............................................................7

      A.    *Loper Bright* Directed Courts To Give *Stare Decisis* Effect
            To *Chevron* Step-Two Decisions .......................................8

      B.    The Statutory Holding Of *Brand X* Controls Here ......................12

III.  AT A MINIMUM, *BRAND X* OFFERS IMPORTANT
      GUIDANCE TO THIS COURT ...................................................14

      A.    *Brand X* Confirms That The Commission Lacks The
            Requisite Clear Congressional Authorization To Reclassify
            Broadband As A Telecommunications Service.............................15

      B.    *Brand X* Does Not Empower The Commission To Classify
            Broadband However It Chooses .....................................................16

CONCLUSION....................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

*CBOCS West, Inc.* v. *Humphries,*
    553 U.S. 442 (2008)........................................................................9, 10

*Halliburton Co.* v. *Erica P. John Fund, Inc.,*
    573 U.S. 258 (2014)............................................................................11

*Kimble* v. *Marvel Ent., LLC,*
    576 U.S. 446 (2015)............................................................................11

*Knick* v. *Township of Scott,*
    588 U.S. 180 (2019)............................................................................14

*Loper Bright Enterprises* v. *Raimondo,*
    603 U.S. __ (2024) ......................................................................*passim*

*National Cable & Telecommunications Association* v. *Brand X
    Internet Services,*
    545 U.S. 967 (2005)......................................................................*passim*

*Rodriguez de Quijas* v. *Shearson/Am. Express, Inc.,*
    490 U.S. 477 (1989)............................................................................14

*Rust* v. *Sullivan,*
    500 U.S. 173 (1991)..............................................................................9

*Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.,*
    552 U.S. 148 (2008)............................................................................11

*U.S. Telecom Ass'n* v. *FCC,*
    855 F.3d 381 (D.C. Cir. 2017)..........................................................16

*West Virginia* v. *EPA,*
    597 U.S. 697 (2022)............................................................................16

**Regulatory Materials**

*Deployment of Wireline Services Offering Advanced Telecommunications Capability,*
13 FCC Rcd. 24012 (1998)..................................................................4

*Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities,*
17 FCC Rcd. 4798 (2002)...............................................................4, 5

*Restoring Internet Freedom,*
33 FCC Rcd. 311 (2018)..................................................................13

**Other Authorities**

Oral Argument, *Tennessee* v. *Becerra,*
No. 24-5220 (6th Cir. July 18, 2024), https://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.ph ...........................................9

Oral Argument Transcript, *Relentless* v. *Department of Commerce*, 603 U.S. __ (No. 22-1219) ...............................................8

## INTRODUCTION

This Court has requested supplemental briefing on the application of *stare decisis* and *National Cable & Telecommunications Association* v. *Brand X Internet Services*, 545 U.S. 967 (2005).  After the Supreme Court's recent decision in *Loper Bright Enterprises* v. *Raimondo*, 603 U.S. __ (2024), *Brand X* alone establishes that petitioners are likely to succeed on the merits.  And even without the new gloss that *Loper Bright* provided, *Brand X* strongly supports a stay, as petitioners have argued from the outset.

*Brand X* is the Supreme Court's sole decision addressing the terms "information service" and "telecommunications service" in the Telecommunications Act of 1996.  *Brand X* involved a challenge to a Commission order that classified cable broadband Internet access service as a single Title I information service, and declined to classify the last-mile transmission component of that service as a separate Title II telecommunications service.  The Supreme Court applied *Chevron* and concluded at Step Two that it was reasonable—and thus lawful—to treat broadband service as a single, integrated information service.  *Loper Bright* now gives that bottom-line holding of lawfulness—shorn of its *Chevron* Step-Two reasoning—the force of statutory *stare decisis*.  Yet the

Commission's Order, which finds that broadband is a telecommunications service and *not* an information service, conflicts with *Brand X*'s bottom-line holding. As a result, this Court must reject the Commission's Order under the normal rules of vertical *stare decisis*.

Even if the statutory holding of *Brand X* did not fully resolve the question here, *Brand X* remains a precedent of the Supreme Court that is instructive in several ways. For starters, no Justice in the majority or the dissent in *Brand X* espoused the Commission's current view that broadband is solely a telecommunications service. To the contrary, there was common ground among all of the Justices that Internet access service is an "information service." That is a telling sign that the Commission has gone astray here. Moreover, in a major-questions case like this one, any finding of ambiguity by the *Brand X* Court dooms the Order, because it means that the Commission lacks the requisite clear congressional authorization to reclassify broadband as a common-carrier telecommunications service.

Finally, this Court should reject the Commission's efforts to turn *Brand X*—a decision affirming the Commission's previous longstanding classification of broadband as an information service—into a decision supporting its directly contradictory current view. The Commission tries to

read *Brand X* to say that Congress gave it carte blanche to classify broadband in whatever manner it chooses, but that argument is *Chevron* by another name and cannot survive *Loper Bright*.

## ARGUMENT

### I. *BRAND X* HELD THAT THE BROADBAND SERVICE AT ISSUE WAS LAWFULLY CLASSIFIED AS A SINGLE, INTEGRATED INFORMATION SERVICE.

To understand the precedential effect of *Brand X*, it is important to understand what the Supreme Court in *Brand X* actually held. From the 1998 Stevens Report to the 2002 order at issue in *Brand X*, the Commission had consistently classified various forms of Internet access services—that is, services that enable consumers to interact with information stored on remote computers—as "information services." *See* Industry Pet. July 8 Supp. Br. 7-9; Carr Dissent, Stay App. 447 & nn.3-7. Nobody—not the *Brand X* challengers, nor a single Supreme Court Justice in the majority or dissent—doubted that the Internet-access-service component of broadband was properly classified as an information service. Instead, the question before the Court in *Brand X* was whether the Commission was required to regulate broadband as two separate services: an information service (Internet access) and a telecommunications service (the "last-mile" connection to a user's home).

For context on why that question arose, some history is needed. One of the early forms of broadband was DSL, which was offered over telephone wires. In addressing DSL, the Commission recognized that the Internet access service offered over DSL was an information service. *Deployment of Wireline Services Offering Advanced Telecommunications Capability*, 13 FCC Rcd. 24012, 24030 (1998). But the Commission sought to level the playing field between ISP telephone companies that owned the last-mile wires and other ISPs that needed access to those wires to reach consumers. *See Brand X*, 545 U.S. at 1000. Drawing on its pre-1996 regulatory treatment of telephone companies, the Commission required those companies to sell separately, to competing third-party ISPs, the "last-mile" DSL connection as a distinct telecommunications service. 13 FCC Rcd. at 24030.

When it came time for the Commission to classify broadband offered over cable television lines, third-party ISPs wanted the Commission to treat cable broadband the same way that it had treated DSL—that is, to disaggregate the Internet-access-service component of cable broadband from the transmission component, and to treat the latter as a telecommunications service. The Commission rejected that approach. *See Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities*, 17 FCC

Rcd. 4798, 4802 (2002). The Commission concluded that cable broadband providers offered a "single, integrated" information service that "enable[d] the subscriber to utilize Internet access service." *Id.* at 4822-4823.

Third-party ISPs challenged the Commission's order. Those ISPs were not arguing that cable broadband was *exclusively* a telecommunications service, with no information-service component. That would have made no sense; they offered Internet access themselves and were not demanding to be regulated as common carriers. *See* Brief for Respondents EarthLink, Inc., et al. at 11-12, *Brand X*, 545 U.S. 967 (Nos. 04-277 et al.), 2005 WL 435900. Instead, the challenger ISPs argued that the cable broadband providers, which they agreed offered Internet access as an "information service," also offered the last-mile connection as a *separate* "telecommunications service." *See id.* at 15, 29.

Like the parties in *Brand X*, no Justice disputed that an "Internet access service" is an "information service." 545 U.S. at 978. As the majority explained, "Internet service" "provides consumers with a comprehensive capability for manipulating information," "enab[ling] users, for example, to browse the World Wide Web, to transfer files from file archives," "and to access e-mail." *Id.* at 987. The dissent did not disagree. *See id.* at 1010 (Scalia,

5

J., dissenting) (contending that the transmission component "merely serves as a conduit for the *information services that have already been 'assembled' by the cable company* in its capacity as ISP") (emphasis added).

Instead, the only dispute was about whether the 1996 Act permitted the Commission to treat both the Internet-access-service and the last-mile-transmission components of cable broadband as a single integrated "offering," or required the Commission to disaggregate them and treat the latter as a separate telecommunications service.  On that question, the Supreme Court found the statutory language ambiguous. *Brand X*, 545 U.S. at 989-990 ("[T]he term 'offer' . . . is ambiguous about whether it describes only the offered finished product, or the product's discrete components as well.").  Applying *Chevron* deference, the Court concluded that it was reasonable—and thus lawful—to treat cable providers as "offering" a single, integrated information service, rather than an information service for Internet access and a separate telecommunications service for last-mile transmission.  *Id.* at 990.

The dissent disagreed on the separability point, concluding that "the telecommunications component of cable-modem service retains such ample independent identity that it must be regarded as being on offer" separately. *Brand X*, 545 U.S. at 1008 (Scalia, J., dissenting).  Justice Scalia colorfully

analogized cable broadband to a pizza shop, which both offers pizza (Internet access service) and separately offers delivery (pure transmission to the home). *Id.* at 1007.  But again, he did not question the premise that broadband providers offer an information service—that is, the pizza.

The Commission here walks back from that premise.  It now says that broadband offers *only* a telecommunications service.  *See* Order ¶ 109.  In doing so, it rejects the idea that providing consumers with access to the Internet is an information service at all.  In particular, although the Commission acknowledges that broadband gives users the ability to access the Internet, it does not consider broadband to "offer[] subscribers the ability to process information in the ways prescribed by Congress's information service definition." *Id.* ¶ 130.  To borrow Justice Scalia's analogy, the fight is no longer about whether the pizza and the delivery are offered together; the Commission now contends that there is no pizza at all.

## II.    AFTER *LOPER BRIGHT*, THE STATUTORY HOLDING OF *BRAND X* IS A CONTROLLING PRECEDENT THAT RESOLVES THIS CASE.

Following the Supreme Court's decision in *Loper Bright*, *Brand X*'s holding now dooms the Commission's rule.  *Loper Bright* directed courts how to deal with *Chevron* Step-Two cases like *Brand X*:  they are to give "statutory

7

*stare decisis*" effect to the underlying holding that a specific agency action was lawful.  Slip op. 34.  The Supreme Court's underlying holding in *Brand X* is that it was lawful to treat broadband as a single, integrated offering of an *information* service.  After *Loper Bright*, that holding gets vertical *stare decisis* effect.  This Court thus may not accept the Commission's new, contrary conclusion that broadband is solely a *telecommunications* service.

A.   ***Loper Bright* Directed Courts To Give Statutory *Stare Decisis* Effect To *Chevron* Step-Two Decisions.**

As petitioners explained in their July 8 supplemental brief, *Loper Bright* tells lower courts how to handle cases, like *Brand X*, that were decided under the *Chevron* framework.  In addressing that question, the Supreme Court could have said that there would be no conflict between prior *Chevron* Step-Two decisions that upheld *reasonable* agency interpretations and future cases that ask whether those interpretations were the *best* ones.  Indeed, that is what the federal government argued would follow from overruling *Chevron*. U.S. Br. 34, *Loper Bright*, 603 U.S. __ (No. 22-451); Oral Arg. Tr. 80-81, *Relentless* v. *Department of Commerce*, 603 U.S. __ (No. 22-1219).  But that would have left 40 years of Step-Two cases up for grabs.

The Supreme Court took a different approach.  It determined that *Loper Bright* does *not* "call into question prior cases that relied on the *Chevron*

framework." Slip op. 34.  Rather, it explained that "[t]he holdings of [prior] cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology."  *Id.* (citing *CBOCS West, Inc.* v. *Humphries*, 553 U.S. 442, 457 (2008)).  And it further cautioned that "[m]ere reliance on *Chevron* cannot constitute a  special justification for overruling such a holding, because to say a precedent relied on *Chevron* is, at best, just an argument that the precedent was wrongly decided" and "is not enough to justify overruling a statutory precedent."  *Id.* at 34-35 (internal quotation marks omitted).  Thus, after *Loper Bright*, statutory *stare decisis* applies when a litigant attempts to revisit the lawfulness of an agency interpretation previously upheld at *Chevron* Step Two.[*]

---

[*]  The government took this position just yesterday at oral argument before a panel of this Court.  *See* Oral Argument, *Tennessee* v. *Becerra*, No. 24-5220 (6th Cir. July 18, 2024), https://www.opn.ca6. uscourts.gov/internet/court_audio/aud1.php.  That case involves a challenge to a Department of Health and Human Services regulation requiring States to provide counseling on abortion options as a condition of Title X funding.  The Supreme Court upheld an earlier, identical regulation as a "permissible construction" of the relevant statute (Section 1008) under *Chevron*.  *See Rust* v. *Sullivan*, 500 U.S. 173, 184 (1991).  At oral argument, counsel for Tennessee argued that, after *Loper Bright*, this Court now has "a *de novo* shot" at whether the regulation is consistent with Section 1008.  Oral Argument at 13:51.  Counsel for HHS disagreed, arguing that *Rust* is "a binding precedent,"

*Loper Bright* described the retreat from *Chevron* as a "change in interpretive methodology," citing a decision addressing the shift in the Court's jurisprudence from purposivism to textualism.  *See Humphries*, 553 U.S. at 457.  The Court thus characterized *Chevron*, like purposivism before it, as a mistaken framework for discerning congressional intent:  *Chevron* wrongly assumed that, by leaving an ambiguity, Congress intended the courts to follow an agency's reasonable statutory interpretation, rather than what might otherwise be the best interpretation.  Slip op. 21.  Because of that mistaken assumption, *Chevron* decisions that upheld the agency's view may have strayed from the best reading of the statutory text.  But just as *stare decisis* protects a statutory precedent that elevated congressional purpose or legislative history over the best reading of the text, it also protects a statutory precedent that may have elevated a reasonable agency interpretation of an ambiguous provision over the best reading of the text.

*Loper Bright*'s instruction to apply "statutory *stare decisis*" in this way to *Chevron*-based "statutory precedent[s]" is nothing new.  As one analogy,

---

*id.* at 20:22, in which the Supreme Court "heard arguments from both sides" and "interpreted Section 1008."  *Id.* at 21:45.  In making that argument, counsel noted that *Loper Bright* did not purport to call "into question prior cases relying on the *Chevron* framework."  *Id.* at 20:3.

the Court today refuses to read into statutes implied private rights of action, and views its past implied-right-of-action cases as "a relic of the heady days in which th[e] Court assumed common-law powers to create causes of action." *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) (Thomas, J., concurring in the judgment) (citation omitted). Yet because of *stare decisis*, those interpretations "remain[] the law," *Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008), at least until the special force of statutory *stare decisis* is overcome, *see Kimble* v. *Marvel Ent., LLC*, 576 U.S. 446, 456 (2015). *Loper Bright* simply provides that "statutory precedent[s]" decided at *Chevron* Step Two should be given the same treatment.

It follows that, after *Loper Bright*, asking a court to approve a construction of a federal statute inconsistent with one that was previously upheld under *Chevron* requires overcoming *stare decisis*. After all, for a litigant to prevail on such an interpretation post-*Loper Bright*, it must defend that new interpretation as the best reading of the statute—*i.e.*, what the statute actually means. That is true regardless of whether the litigant is a private party or an agency. If a court accepts the new interpretation as the best reading of the statute, then the agency will no longer be free to apply its

11

previous interpretation, and the earlier decision upholding that previous interpretation as "lawful" will effectively have been overturned.  A court may not do that to a "statutory precedent" without a "special justification" that overcomes "statutory *stare decisis*."  Slip op. 34-35.  And a lower court may not do that to a Supreme Court statutory precedent at all.

### B.     The Statutory Holding Of *Brand X* Controls Here.

Under *Loper Bright*, *Brand X*'s bottom-line statutory holding controls the outcome here.  In *Brand X*, the Supreme Court upheld, as "a lawful construction of the Communications Act under *Chevron*," the Commission's declaratory ruling that ISPs "that sell broadband Internet service do not provide 'telecommunications service' as the Communications Act defines that term," even though that service includes transmission to customers' homes. 545 U.S. at 973-974; *see id.* at 987.  That bottom-line "holding" is what is now "subject to statutory *stare decisis*."  *Loper Bright*, slip op. 34.

The Commission's current Order cannot be squared with *Brand X*'s conclusion that a cable company providing "broadband Internet service do[es] not provide 'telecommunications service'" within the meaning of the 1996 Act. 545 U.S. at 974.  As discussed above, a necessary—indeed, unchallenged— premise of the interpretation upheld in *Brand X* was that Internet access

12

service is an information service because it "provides consumers with a comprehensive capability for manipulating information" and accessing information online. *Id.* at 987; *see Restoring Internet Freedom*, 33 FCC Rcd. 311, 324-325 (2018) (describing that "long-standing" view of the Commission); Pet. Supp. Br. 11-12. That premise is why the Commission classified the entire integrated broadband offering as an information service. The Internet access service was, to again use Justice Scalia's analogy, the pizza part of a pizza-delivery service.

Yet the Order under review declares that *all* broadband is solely and exclusively a telecommunications service. *See* Order ¶ 133 n.519 (rejecting arguments to disaggregate the components of broadband service because "the entire [broadband] offering is best classified as a telecommunications service"). The Commission acknowledges that ISPs still offer the same capabilities that made Internet access an information service in *Brand X*, 545 U.S. at 999-1000—such as the core capabilities to retrieve, store, and interact with information. Order ¶¶ 130-132. But the Commission now refuses to classify broadband providing these very same capabilities as an information service, instead applying a different, mutually exclusive statutory

classification.  *See id.* ¶¶ 130, 133.  The Order's interpretation is therefore incompatible with the statutory precedent of *Brand X*.

That precedent controls the outcome of this case in this Court, under the normal rules of vertical *stare decisis*.  This Court cannot affirm the Commission's decision to adopt a statutory interpretation that is incompatible with *Brand X*'s holding, because *Brand X* is a decision of the Supreme Court. *See Rodriguez de Quijas* v. *Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").  To be sure, the Commission could try to overcome statutory *stare decisis* in the Supreme Court, addressing "the quality of [*Brand X*'s] reasoning, the workability of the rule it established, . . . and [the lack of] reliance on the decision."  *Knick* v. *Township of Scott*, 588 U.S. 180, 203 (2019) (citation omitted).  But what the Commission has offered so far would not pass muster there.

## III.  AT A MINIMUM, *BRAND X* OFFERS IMPORTANT GUIDANCE TO THIS COURT.

Even if *Brand X* did not require this Court to reject the Commission's argument as a matter of statutory *stare decisis*, it still supports petitioners'

arguments that the best reading of the 1996 Act is that broadband is an information service.  In all events, *Brand X* certainly does not support the Commission's contrary reading of the statute.

>    **A.    *Brand X* Confirms That The Commission Lacks The Requisite Clear Congressional Authorization To Reclassify Broadband As A Telecommunications Service.**

Two aspects of *Brand X* are particularly helpful to petitioners.  First, *Brand X* is the only case in which the Supreme Court has ever analyzed the Commission's classification of broadband, and the Court concluded that classifying broadband as an information service was at least a reasonable interpretation of the 1996 Act.  What is more, no Justice endorsed the Commission's current theory that the entire broadband offering is a telecommunications service.  *See supra*, pp. 3-7.  Even if this Court affords no further *stare decisis* effect to *Brand X*'s statutory analysis, *Brand X* remains a strong indicator that the Commission's current interpretation has strayed from the best reading of the text.  *See* Stay Mot. 13-19; *see also* NCTA Comments, Stay App. 865-887; USTelecom Comments, Stay App. 1114-1133.

Second, the Supreme Court's decision in *Brand X* makes clear that the major-questions doctrine forecloses the Commission's current Order.  As petitioners have explained, the Commission's decision to treat the $150 billion

broadband industry as a public utility is a question of "vast economic and political significance." *West Virginia* v. *EPA*, 597 U.S. 697, 716 (2022) (citation omitted); *see* Stay Mot. 9-13. Accordingly, under the major-questions doctrine, the Commission must point to unambiguous congressional authorization for its reclassification of broadband as a Title II telecommunications service. *West Virginia*, 597 U.S. at 723.

Under the major-questions doctrine, as then-Judge Kavanaugh observed, any "finding of statutory ambiguity" about the Commission's ability to regulate broadband under Title II is "a *bar* to [the Commission's] authority" to do so, because it "by definition means that Congress has not *clearly* authorized" Title II regulation. *U.S. Telecom Ass'n* v. *FCC*, 855 F.3d 381, 425-426 (D.C. Cir. 2017) (Kavanaugh, J., dissenting from denial of rehearing en banc) (emphasis added). Thus, to the extent *Brand X* found key statutory terms ambiguous, the Commission necessarily lacks the required clear congressional authorization.

### B. *Brand X* Does Not Empower The Commission To Classify Broadband However It Chooses.

The Commission tries to spin *Brand X* in its favor, but its argument does not work. According to the Commission, *Brand X* "empowers the FCC to determine the proper classification of broadband." Stay Opp. 19; *see* Order

¶¶ 254, 264 & n.1105.  But again, as discussed above, what *Brand X* actually held is that "the statute fails unambiguously to classify the telecommunications component of cable [broadband] as a distinct offering" from the Internet-access-service component, which every Justice understood was an information service.  545 U.S. at 992; *see supra* pp. 3-7.  It was only that separability question—"whether the [two components] are functionally integrated . . . or functionally separate"—that the Court said *"Chevron* leaves to the Commission to resolve in the first instance."  *Id.* at 991.  By contrast, the Commission here is claiming that the entire, integrated offering is a telecommunications service.  The Court never said that the Commission has discretion to read the statute that way.

Moreover, *Brand X*'s discussion of the Commission's authority relied on the now-defunct *Chevron* framework, which transformed statutory ambiguities into implicit delegations of interpretive authority to federal agencies.  *See* 545 U.S. at 980 (holding that the "*Chevron* framework governs our review of the Commission's construction" because "Congress has delegated to the Commission the authority to . . . promulgate binding legal rules" and "the Commission issued the order under review in the exercise of that authority").  *Loper Bright* eliminated the discretion the Commission

claims; indeed, that discretion was part of the reason for the Court's decision to overrule *Chevron*. *See* slip op. 26. The Commission cannot credibly assert the power to continue to flip-flop in its treatment of broadband, each time "claim[ing] its new rule [is] just as 'reasonable' as the last." *Id.* at 23 (Gorsuch, J., concurring).

*    *    *

*Loper Bright* provides a new and independent ground—the elevation of *Brand X* to binding "statutory precedent"—why petitioners should prevail on the merits of their challenge. But to be clear, petitioners are overwhelmingly likely to prevail on the merits regardless of *Loper Bright*. Whether broadband providers may be regulated as public utilities is the quintessential major question. And the Commission has nothing close to clear congressional authorization to exercise that kind of power. For all the reasons given in petitioners' briefing, the far better reading of the 1996 Act is that broadband providers offer an information service subject to Title I, not a telecommunications service subject to Title II. That remains true apart from any effect of *Loper Bright* or *Brand X* on this case. This Court should grant the stay for any and all of these reasons.

## CONCLUSION

The Court should stay the Order pending judicial review.

Respectfully submitted,

 s/ Helgi C. Walker
HELGI C. WALKER
JONATHAN C. BOND
RUSSELL B. BALIKIAN
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
(202) 955-8500

*Counsel for CTIA – The Wireless Association*

 s/ Matthew A. Brill
MATTHEW A. BRILL
MATTHEW T. MURCHISON
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Ohio Cable Telecommunications Association, NCTA – The Internet & Television Association, Florida Internet & Television Association, MCTA – The Missouri Internet & Television Association, and Texas Cable Association*

 s/ Jeffrey B. Wall
JEFFREY B. WALL
MORGAN L. RATNER
ZOE A. JACOBY
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006
(202) 956-7500

MAXWELL F. GOTTSCHALL
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

*Counsel for Ohio Telecom Association, USTelecom – The Broadband Association, and NCTA – The Internet & Television Association*

19

 s/ Jeffrey A. Lamken

JEFFREY A. LAMKEN
RAYINER I. HASHEM
JENNIFER E. FISCHELL
JACKSON A. MYERS
MOLOLAMKEN LLP
600 New Hampshire Avenue NW
Suite 500
Washington, DC 20037
(202) 556-2000

*Counsel for ACA Connects –
America's Communications
Association*

 s/ Thomas M. Johnson, Jr.

THOMAS M. JOHNSON, JR.
JOSHUA S. TURNER
JEREMY J. BROGGI
BOYD GARRIOTT
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000

STEPHEN E. CORAN
LERMAN SENTER PLLC
2001 L Street NW, Suite 400
Washington, DC 20036
(202) 429-8970

*Counsel for WISPA – The
Association for Broadband
Without Boundaries*

JULY 19, 2024

20

## CERTIFICATE OF COMPLIANCE

The Court's Order of July 12, 2024 did not impose a word limit for this supplemental brief.  The brief contains 3,786 words.

This brief complies with the requirements of Federal Rules of Appellate Procedure 27(d) and 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

s/ Jeffrey B. Wall
JEFFREY B. WALL

JULY 19, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2024, I electronically filed the foregoing supplemental brief with the Clerk of Court for the U.S. Court of Appeals for the Sixth Circuit using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Jeffrey B. Wall
JEFFREY B. WALL

JULY 19, 2024